[CHAMBERSBURG, OCTOBER 15, 1828.]

## CARSON *against* M'FARLAND.

### IN ERROR.

An administrator, who has paid money within the year to a creditor of the intestate, on account of a just debt, cannot recover it back, on the ground that, by reason of deficiency in the assets, not arising from their accidental failure, it afterwards appears to have been an over-payment, by mistake.

WRIT of error to the Court of Common Pleas of *Franklin* county.

*Chambers,* for the plaintiff in error.

*Crawford, contra.*

The opinion of the court was delivered by

HUSTON, J.—The case stated was to be considered as a special verdict. The following is an abstract of the facts: On the 15th of *May,* 1822, *Thomas Carson,* the plaintiff, took out letters of administration

(Carson *v.* M'Farland.)

on the estate of *John Huston,* deceased.    He filed an inventory in due time, and held a vendue of the personal property, which personal property amounted to above four thousand dollars.    On the 14th of *March,* 1823, *Thomas Carson* paid to the defendant two hundred and twenty-three dollars, and forty-six cents, being the amount of a single bill given by *John Huston,* in his life time, to the defendant.

*John Huston* was one of the sons of *James Huston,* deceased, and had shortly before his death taken, under a decree of the Orphans' Court of *Franklin* county, a part of his father's estate, at an appraisement, and entered into recognisances to pay to his brothers and sisters their shares of the said lands.

In *August,* 1823, his administrator, Mr. *Carson,* applied in due form of law to the Orphans' Court, for an order to sell the lands of *John Huston,* deceased, to enable him to pay the debts.    Not being able to obtain a satisfactory price, the order was continued at several subsequent courts; and, in *February,* 1825, the land was sold for eight thousand four hundred and fifty dollars, and in *April* following, the sale was confirmed.    It now appeared, that the proceeds of the whole real and personal estate would not pay the debts of the deceased; and, on application of the administrator, the court appointed auditors to apportion the money among the creditors.    In *April,* 1827, their report was made and confirmed by the court.    By this report, the whole proceeds were required, to pay debts of a higher degree than specialties: in fact, the recognisances were not all paid, but the conusees each received something less than their whole debts.

The plaintiff then brought this suit to recover back from *John M'Farland,* the defendant, the sum of two hundred and twenty-three dollars and forty-six cents, alleging it was paid him under a mistake as to the solvency of the estate.    There was no allegation of any actual wasting by the administrator; the deficiency arose from the accumulation of interest, and the depressed price of lands.

It will be observed, that, in this case the administrator paid the money within the year, and to a person undoubtedly a creditor of the estate; and that, if there was any mistake as to the solvency of the estate, such mistake arose not from any statement or representation of the defendant, but from some other cause.

The law, as it regards the liability of administrators or executors, and how far, and under what circumstances, they may become personally liable for the debts of the estate they represent, is not an unimportant part of our jurisprudence.    I do not mean to go out of the present case, or even to hint an opinion on some of the topics discussed, and which must present themselves to the mind.

In *England,* after some variance of decision, it seems to have been settled at one time, that a creditor, or even another legatee, could, in some cases, compel a legatee, who had received his legacy, to refund, in case of a deficiency of assets.    This is, however, with some

(Carson *v.* M'Farland.)

restriction; for, if the assets were sufficient at the decedent's death, but were wasted by his executor, there was no refunding in favour of the legatee, or perhaps of the creditor; and a further distinction seems to have existed, as to refunding in favour of the legatee or creditor, when the executor was insolvent, and in favour of the executor, who would lose, unless he could compel those who had received to refund. See 1 *Vern.* 94, 460, 469. 1 *P. Wms.* 495. 1 *Anstruther*, 112. *Com. Dig.* 630. *Chancery, Legacy*, (3 G. 3.) 1 *Vern.* 162. 2 *Johns. Chan.* 626, 627.

But even there, on reading carefully the cases cited, there will be found some reason to believe it was only where refunding receipts were taken, or in consequence of the peculiar jurisdiction and authority of the Court of Chancery, that any one, who had received only what was at the time supposed due to him, would be compelled to refund. 2 *Com. Dig. Chan.* (3 G. 3.) 2 *Ventris*, 360. There is in 1 *P. Wms.* 355, (*Pooley et al.* v. *Ray*,) a *dictum* of the Master of the Rolls, that a creditor who has received money due him from the estate, may be sued, and compelled to refund in favour of another creditor; but, on a rehearing of the case, nothing is said on this subject. 2 *P. Wms.* 291, 297, *Coppin* v. *Coppin.* 2 *Ves.* 192. There is not, it is believed, in the *English* authorities before our Revolution, any direct decision, that a creditor, who has been paid a debt due him, can be compelled to refund in favour of another creditor; though it must have often happened, that one received all the assets, and another received nothing, or was paid out of the estate of the executor; and there are express decisions to the contrary. See 2 *Ventris*, 260. *Com. Dig. Chancery*, 393.

In this case, the administrator paid money justly due, and paid it within the year allowed by our law, to ascertain the situation of the estate. The assets were, or ought to have been, better known to the administrator, than any body else. No *accidental failure* of the fund occurred, to any material extent; the defendant has no money to which in honesty and conscience he is not entitled, as against the estate of the deceased. The hardship on the plaintiff may be great. The hardship on the defendant, if called on to refund, would not be small; and the confusion, inconvenience, and general uncertainty which would follow from a decision, that, an honest creditor, who had gotten an honest debt, was liable to be sued, and compelled to repay, would be so great—would make the settlement of estates so uncertain, and so interminable, that we think the plaintiff ought not to recover.

                                        Judgment affirmed.