[Sunbury, July 3, 1829.]

## BROWN *against* The COMMONWEALTH.

IN ERROR.

A county treasurer's account, settled under the provisions of the act of assembly of the 30th of *March,* 1791, may be altered by the auditors, at any time before it is returned to the Court of Common Pleas.

A treasurer of a county is not entitled to compensation for travelling out of the county to collect taxes on unseated lands.

If the auditors proceed to settle the account without giving notice to the treasurer, and their report be filed, no appeal entered, and an execution issued, the court, on application, will set the report aside; but, if the treasurer enter an appeal, and the whole matter is taken up anew in the court, the defect is cured.

ERROR to the Court of Common Pleas of *Lycoming* county.

*Matthew Brown,* the plaintiff in error, had been the treasurer of *Lycoming* county, and on the termination of his office, his accounts were submitted for settlement to auditors, under the act of assembly of the 30th of *March,* 1791. From their decision he appealed to the Court of Common Pleas; and, on the trial, on the 8th of *September,* 1827, the jury found a verdict in favour of the commonwealth, for the sum of three hundred and eighty-two dollars and forty-two and a half cents.

Several bills of exceptions, as well to the admission of evidence, as to the charge of the Court of Common Pleas, were taken and argued in this court, by *Anthony,* for the plaintiff in error, and by *Armstrong,* for the defendant in error.

The opinion of the court, which embraces all that is material in the case, was delivered by

HUSTON, J.—By the act of assembly of the 30th of *March,* 1791, auditors were to be appointed amicably to settle the accounts of

(Brown *v.* The Commonwealth.)

treasurers, commissioners, &c. of the county; and, although the auditors are now, by a subsequent law, to be elected, the other provisions of the act of assembly of 1791, are in force; at least, such of them as are material in this case.

Section fifth provides: "That the said auditors having examined and settled the said accounts, to the best of their skill and ability, shall report the same with the respective balances due, to, or from such commissioners or treasurer, to the next County Court of Common Pleas for such county, who shall thereupon cause such report and settlement to be filed among the records of said court: and such report, from the time of being so filed, shall have the effect of a judgment, on the lands, tenements, and hereditaments of such commissioners or treasurer, who shall thereby appear to be indebted: and, if within sixty days after such report, made and filed, the said commissioners or treasurer, their executors, or administrators, or any of them, shall enter their appeal in the said court, from the said settlement, or any part thereof, it shall be lawful for the court to direct an issue, wherein the commonwealth shall be made plaintiff or defendant, as the case may require, to be tried by a jury during the next term, upon whose verdict, final judgment shall be entered." It then goes on to prescribe the bail to be entered by the party appealing.

*Matthew Brown* was treasurer of *Lycoming* county, in the year 1826; and an account, finding him indebted to the county, was settled by the auditors on the 31st of *January,* 1827, and this report given to the Court of Common Pleas, who ordered the same to be filed. By this report, Mr. *Brown* was found indebted to the county two hundred and thirty-three dollars. He appealed in due form; and, on the trial of the issue, several points arose, which are the subjects of this writ of error. After the jury were sworn, the plaintiff's counsel offered to read and show to the jury, the account of *Matthew Brown,* treasurer, &c., as filed in the office of the prothonotary, according to law. This was objected to; and the court admitted the report of the auditors, order of court to file, &c. and the appeal, to show what were the report and proceedings till this time, *but not to establish any one item charged in the said report against the treasurer.* This formed the subject of the *first* bill of exceptions, but was not insisted on here, and ought never to have been taken. In those proceedings specially prescribed by act of assembly, and not commenced in the ordinary course of law, it is right that the nature of the dispute, the manner in which it came before the jury, and what is before the jury, should be understood by them; and, with the limitation prescribed by the court, nothing would so clearly and satisfactorily show this as the course taken. The plaintiff then offered to adduce evidence, to prove the items of which the debit side of the account was composed. This was objected to on the following ground, and this was the only matter on which this court were seriously called on to decide:—The auditors

(Brown *v.* The Commonwealth.)

had met on the 5th of *January,* 1827, and gone through the account of Mr. *Brown,* and made out a report, signed by two of the three auditors, finding a balance in favour of *Brown* of two hundred and seventy-seven dollars. This was never presented to the court, but was seen by the commissioners, who drew an order, or orders, in favour of *Brown* for that amount. It was also copied into what is called the auditor's book, on the same day; and, in that book, immediately under the account, the other auditor wrote:—

"I do hereby protest against the passage of the above account; because, it is incorrect in part, contrary to law in part, and because the compensation allowed Mr. *Brown,* is unnecessarily extravagant.

"*W. R. Powers.*"

Afterwards, one of the auditors who had signed the account, changed his opinion. The account, as copied into the auditor's book, had a cross put on it, and this auditor took his name from the account made out and signed for the purpose of being given to the court to be filed. The auditors met again, and on the 31st of *January,* 1827; two of them signed the report which was given to the court, and filed, and which was appealed from, and was now trying.

The defendant's counsel showed the court this cancelled account of the 5th of *January,* 1827, and the same account in the auditor's book, crossed; and, insisted it was conclusive; that the auditors, or a majority of them, having once agreed on a report, copied it into the book, and signed it, without having handed it to the court, were bound—they could not revise or alter it. The court held this not to be the law, and admitted the plaintiff to prove the items of the debit side of the account, and to this the *second* bill of exceptions was taken.

We are of opinion there was no error. I can see no ground in reason, why any referees, or arbitrators, who have made an award or report, may not, before it is finally delivered to the parties, or the court, reconsider it, and if found wrong, change it. There is nothing in the act, or acts of assembly, which will forbid this, in the case of county auditors. They are to examine and settle the account "to the best of their skill and ability;" and their report is not to be instantly filed, but to be reported to the next court. Reason, and justice to themselves, and to the county, and the parties, unite in permitting them to use their skill and abilities, until the report passes from their hands to the court. It was not necessary that this account should go to the commissioners; and, if it did reach their office, they were bound to know, that until given to the court, and ordered to be filed and recorded, it was not conclusive. The account settled by the auditors, has been, in some degree, confounded in the argument, and, is too often confounded with an account, directed by the fourteenth section of the act of assembly of the 11th of *April,* 1799. This latter act directs the treasurer, if re-

(Brown *v.* The Commonwealth.)

quired, to furnish a statement of his account, balanced, once in three months; and that he shall, once in every year, settle his accounts with the commissioners, and produce his vouchers, which being allowed by the commissioners, shall by them be laid before the auditors, appointed under the act of assembly of 1791, to settle the accounts of commissioners and treasurer, who shall proceed to the settlement thereof, as by the said act is directed. The two acts taken together, contemplate two distinct settlements of the treasurer's accounts; one with the commissioners, who draw all, or nearly all the orders which the treasurer is to pay, and they are to examine, among other things, these orders, and see that they are genuine. This account is to be submitted to the auditors, who are to ascertain that the orders and payments on them were legal as to their objects, such as are directed by law, or otherwise within the powers and duties of commissioners and treasurers, and also, that they are reasonable in their amount, &c.

The first account settled by the commissioners with the treasurer, is not conclusive on the auditors; and the report of the auditors, even when made to the court, and by them ordered to be filed among the records, is not conclusive. An appeal within sixty days is given, and if taken in the manner prescribed, the whole is investigated anew before a court and jury, in the county, and this again may go to the Supreme Court.

The two accounts agreed to a cent in the amount of money received by the treasurer from collectors in the county, and from the owners of unseated lands for county and road tax; and, also, in the amount of the orders paid by the treasurer; but, two orders, drawn by the commissioners in favour of the treasurer, and for which he asked credit for the amount retained, were struck out of the account in the second report made and filed; and, also, rejected by the court and jury. One of them was an order, drawn by the commissioners in favour of the treasurer, for his time and expenses in going to *Philadelphia*, to collect the taxes due by the owners of unseated lands. It is a practice of many years' standing, for the treasurers of the counties containing much unseated land, to go to *Philadelphia* in the winter, and give notice generally, that they are in the city, by a note in the newspapers, and their books being with them, the owners of the unseated lands, or many of them, call; examine their accounts and pay them. The treasurer often receives large sums in this way. The 14th section of the act of assembly of the 11th of *April*, 1799, above cited, directs, that the commissioners shall allow the treasurer so much per cent. on all monies received and paid by him, as they shall, from time to time, deem sufficient for his services, which being approved of by the auditors aforesaid, *shall be in full for his services as treasurer.* Where a positive law prescribes the manner and nature of the payment to be made to an officer, the directions of the law are, and ought to be, the only rule. We had at one time, in this state, a custom of admitting, under the

(Brown *v*. The Commonwealth.)

name of compensatory fees, many charges by officers, not allowed by any law. These, in many instances, are now expressly forbidden by late acts of assembly, and ought always to have been rejected under the fair construction of our laws. An officer derives equally his authority and his compensation from the law, and where both are defined in the law, he can no more enlarge the one than the other. It is no part of the duty of a treasurer to travel the country to collect money. If he can receive pay for his time and expenses in going to *Philadelphia*, why not for going to *Lancaster*, and *Carlisle*, and *Pittsburgh*, and *New York*? in short, for going to any and every place in which an owner of unseated land resides; and, thus, change his office from that of treasurer to collector, and his salary from per centage on money received and paid, to daily pay in travelling to collect it? The other item was an error in computing the sum due from the county on deeds and costs on sales of lands, purchased by the commonwealth for the county, and was not objected to here.

Another difference in the two accounts arose from this:—The first account, by mistake, we must suppose, gave the treasurer a per cent. on the amount of road tax *assessed*, instead of on the amount of road tax *received and paid* over by the treasurer. It was not alleged here, that there was any error in correcting this.

Much was said about the power of a court and jury, and something about the power of auditors to change the rate per cent. agreed on by the commissioners, as compensation to the treasurer. The act above cited, expressly requires, that the compensation agreed on by the commissioners, be approved by the auditors. The terms "*being approved by the auditors*," imply an exercise of judgment; and, the right of appeal from the report of the auditors, is general to the whole account, or any part of it. I do not see how this court can make this an exception. At the same time, I know it is usual for an understanding to exist in most counties, that every treasurer shall receive a certain rate per cent. on monies received and paid; and, I would not, without strong reasons, depart from what may fairly be considered a contract, if not express, at least, clearly implied. But where, as in *Lycoming* county, this rate varies with every treasurer, according to some principle not generally known, or acknowledged, or according to no principle, the right to revise and control it, is a wholesome provision.

A great deal was said on a subject which was not expressly alleged as error, but which is too important to be passed over. It was proved at the trial, that Mr. *Brown* did not attend before the auditors while they were making out the report of the 31st of *January*; and the assertion was often repeated, that he had no notice that the auditors were about to meet and revise the account. If they did proceed without giving him notice, it was grossly wrong. The act which gave them authority, required them to give notice, and empowered them, after notice given, to proceed *ex parte*, if the treasurer did not attend.

(Brown *v.* The Commonwealth.)

If no notice was given to him, and the report had been made and filed, and no appeal, and an execution had issued, the court, on application, would have set it aside. The principle is universal in this country, that no man's person or property can be affected by a judgment, of which he had not actual or legal notice; but, where he appeared, and appealed, and the whole matter was in court taken up anew, he, at the trial, was in the same situation as if he had appeared before the auditors; and, in judging of the proceedings in court, where he did appear, we are confined to those proceedings.

But I am by no means satisfied he had not notice. The auditors were not examined in court. This point was not directly made there, perhaps not mentioned; and, from many parts of the case, I would infer, that he had notice, and refused to attend.

Judgment affirmed.