MOTHLAND *against* WIREMAN, ADMINISTRATOR OF THORNBURG.

3pw185 166 127 3pw185 180 179 180 182

IN ERROR.

The Orphans' Court may direct an issue to ascertain specific facts, in the usual shape of a wager; but it is incompetent to delegate its jurisdiction in matters of account depending on both fact and law.

An administrator is not chargeable with assets of the intestate in another state, of which he may have obtained possession.

Administration confers upon the administrator rights, and creates liabilities co-extensive only with the jurisdiction which confers it.

Where an issue was directed by the Orphans' Court "to try and determine with what amount an administrator is chargeable" and stipulating that under such issue "every legal claim against the said administrator shall be tried and determined, and judgment thereon to be taken in the Orphans' Court for the sum with which he is to be charged as administrator," such issue was framed to determine, not the validity of particular items, but the aggregate amount of the debts properly chargeable, and the jury under such issue should find the exact sum. It is error therefore in such case to instruct the jury to find a general verdict for the defendant if they should find that the plaintiff had not sustained the items disputed, if there were other items which were not in dispute, and admitted to be properly chargeable.

ERROR to the Court of Common Pleas of *Adams* county.

The Orphans' Court of that county had directed an issue to the Common Pleas "to try and determine with what amount the said *Isaac Wierman* is chargeable as administrator of the estate of *Thomas Thornburg*, deceased;" the issue to "be joined on a declaration for money had and received by the defendant as administrator, and the plea of not guilty; under which every legal claim against the said administrator shall he tried and determined and judgment thereon to be taken in the Orphans' Court for the sum with which he is to be charged as administrator."

On the trial of this issue, the plaintiff gave in evidence the administration account which the defendant had presented to the Orphans' Court for confirmation, on which the issue was directed, and in which he had charged himself with items amounting to twelve hundred and thirty-nine dollars, and twenty-seven cents; he also gave evidence to prove the receipt of assets in the

state of Maryland by *B. Blackford* who was his co-administrator, with which the plaintiff sought to charge the defendants. It is not necessary, from the view taken of the case by the Supreme Court, to state the various exceptions taken on the trial. The Court charged the jury that if there were no additional sum with which the defendant was chargeable, beyond what he charged himself with in his account, the issue should be found in his favor. The charge was excepted to, and a general verdict passed for the defendant.

   The cause was argued by *Penrose* (with whom was *Fuller*) for the plaintiff in error, who referred to *Swearingen* v. *Pendleton*, 4 *Serg. & Rawle*, 389. 3 *Starkie E.* 1728. And by

*Stevens* and *Carothers* for the defendant in error. They cited *Cox. Dig.* 11 *p.* 1. 15 *p.* 58. 1 *Cranch*, 259. 9 *Wheaton*, 565. 3 *Day*, 303. *Greame* v. *Harris*, 1 *Dall.* 456. *M'Culloch* v. *Young*, 4 *Dall.* 292.

The Court's opinion was delivered by

GIBSON, C. J.—The defendant to whom with others administration was granted by the Register of *Adams* county, where the intestate resided, having exhibited a separate administration account, the plaintiff claimed a right to charge him with a moiety of profits derived from the *Catoctin Iron Works*, and remaining in the hands of Mr. *Blackford*, the surviving partner of the intestate and one of his administrators. These works which are situate in Maryland, had been leased to the decedent and Mr. *Blackford* who continued the business for joint account, after the decedent's death, till the end of the term; at the expiration of which he removed to *Virginia*, where he has since resided. The Orphans' Court, before whom the account was brought for confirmation, directed an issue to the Common Pleas, in which the plaintiff was ordered to declare for money had and received, and the defendant to plead *not guilty*, "to try and determine with what amount the said *Isaac Wireman* is chargeable as administrator of said estate." Such a plea to such a declaration, is the least remarkable thing in the concoction of this singular issue. A transfer of half the account to the Common Pleas, was a transfer of half the jurisdiction of the Orphans' Court, on the principle of which, the issue might have been so framed as to transfer the whole. A delegation of power which the Orphans' Court is not competent to make, or the Common Pleas to receive. In the trial of the issue, the jury were burdened with accounts which were proper for adjustment by no one but an auditor; and in addition, the cause comes here not by an appeal on the merits, but by a writ of error on bills of exceptions. The Orphans' Court may undoubtedly direct an issue to as-

(Mothland *v.* Wireman.)

certain specific facts in the usual shape of a wager; but we are bound to declare it incompetent to delegate its jurisdiction in matters of account depending on both fact and law. The court below, therefore ought to have struck out the issue; but as a different course was pursued, it was necessary to dispose of the errors alleged to have been committed at the trial. These, all but one which shall be separately considered, relate to the particulars of the charge, without regard to a principle which lies at the bottom of the whole and excludes it from the account as a subject that appertains to another jurisdiction.

That the liability of administrators to account, is commensurate with the jurisdiction of him from whom they have received their authority, whether Ordinary, Surrogate, or Register, and that they can act officially only in things committed to them, is a common principle of general jurisprudence. In the land of our forefathers this officer succeeded to the powers of the King, who, as the general trustee of the kingdom, was entitled to the effects of a decedent in order to apply them to his burial, payment of his debts, and maintenance of his family—a trust which, in exclusion of foreign interference, is vested in some particular branch of every government, being indispensable to the protection of the domestic creditors. In England it is committed to officers whose jurisdiction is local, so that where the effects are within two or more of these jurisdictions, administration is granted by the officer of neither, but by a common superior whose power extends over the whole and to whom the administrator is accountable for the use of it. An interference under foreign authority, has never been tolerated, there or elsewhere, except in our own state as a matter of courtesy. Nowhere else is an action maintained on a title derived through a foreign grant of administration, and for the plain reason that a recovery would withdraw the effects from the operation of the laws to which they are properly subject, and commit them to the administration of those who are in nowise amenable to those laws, so that instead of being protected in their rights by the power of their own government, the resident creditors would be sent abroad to assert their claims in foreign courts at the risk of having them determined by laws less favourable. It is on the same principle of domestic protection, that an attachment of a debtor's effects is sustained by the American courts, against a prior assignment under a foreign commission of bankruptcy. The succession is undoubtedly regulated by the law of the domicil, but administration always by the *lex loci rei sitæ.* And this distinction is of infinite value to the creditor, whose action might be barred in a foreign court by the lapse of a period that would be insufficient to bar it at home, or whose demand might, in the event of a deficiency, be subjected to a less beneficial rule in the order of payment. It is, there-

(Mothland *v.* Wireman.)

fore indispensable, that the effects of a decedent be collected and administered under the control of the government, within whose jurisdiction they were at the time of his death.   How far our own injudicious comity will necessarily be restrained by the act which lays a duty on the effects where the succession devolves on collaterals, it is at present unnecessary to determine.   In a case where the assets are known to be subject to the duty, it might be enforced by ordering the money to be brought into court at the return of the execution; still that precaution would not reach the case of a voluntary payment, and in any event, the security of the administrator's oath, required by the act, would not be had.   But that the effects are to be collected and administered by local authority, is a principle not only of British, but of American law.   In *Topham* v. *Chapman*, 1 *Rep. Const. Court. S. C.* 292, it was much debated whether they should not also be distributed by the same authority though according to the law of the domicil, but that the collection and payment of the debts might be by any other authority was never supposed.   The same question was debated in *Harvey* v. *Richards*, 1 *Mason*, 485; and in *Davis* v. *Head*, 1 *Pickering*, 128, it was held that an administrator here, though admitted to be but auxiliary to the administrator at the place where the decedent was domiciled, is bound to remit the assets to be administered there only in case there are no domestic claimants in the character of creditors, legatees, or next of kin: but that where these appear, the assets are to be retained for administration according to our own laws, permitting the foreign creditors to participate in proportion to their debts, respect being had to the aggregate of the estate and of the debts whether foreign or domestic. If then the grant of administration in *Pennsylvania*, gave the defendant no title to the assets in *Maryland*, what obligation does it impose on him to account for them?   It is said that though he be not chargeable for negligence in not having received them, yet that being jointly liable with the other administrators by force of their bond to the Register, and one of them as surviving partner of the decedent, having the effects in his hands, the defendant, too, is to be considered as in actual possession, and therefore bound on the supposed authority of *Swearingen* v. *Pendleton*, 4 *Serg. &. Rawle*, 389, to account before the Orphans' Court.   I am not going to admit that an administrator though virtually liable for the defaults of his fellows, is chargeable with their responsibilities in the settlement of a separate account.   But granting the assets, to have actually come to his hands, I am unable to see why he should account for them here.   His receipt of them, being in derogation of the rights of the foreign administrator, would subject him to an action in which his character of administrator would not avail him: and to compel him to respond to the foreign adminis-

Mothland *v.* Wireman

.trator and the creditors too, would subject him, not only to a
.double liability, but to be treated with greater rigour than an exe-
.cutor *de son tort,* who is entitled to an allowance for proper pay-
.ments, whereas, for payments proper, according to our laws, the
.defendant would not be allowed in an action against him, unless
.they happened to consist also with the laws of Maryland. To ad-
minister an estate in part according to the laws of one state, and
.in part according to the laws of another, would, were it even prac-
ticable, lead to endless confusion. But putting the embarrassment
to which that would expose the administrator out of view, the ab-
duction of the effects in contravention of the laws of a sister state,
would be such a manifest usurpation of right, as to forbid the ex-
ercise of a jurisdiction thus acquired    The principle of *Swear-
ingen* v. *Pendleton* has been misapprehended. The point de-
cided was that an action may be brought against an executor
any where, just as the same point was decided in *Dowdales'
case,* 6 *Rep.* 42. It is proper to remark that in both these cases
the action was against an executor whose title, being under the
will and not a local grant of administration, extended to the assets
wherever found. Indeed there would be a failure of justice if
even an administrator could elude the creditors by fleeing to a for-
eign state. Of the difference between an action to enforce a de-
mand according to the laws of the country from which he has
withdrawn, and the settlement of an administration account ac-
cording to the laws of a different country, it is scarce necessary to
speak. Except as regards the statute of limitations, the creditor
would in the one case have nothing to do with the law of the for-
mer, while in the other, he would be bound by it even as to the
order of payment of the debts. A distinct ground taken in the ar-
gument *is,* that the administration bond prescribed by our act of
Assembly binds the administrator to account for "all and singular,
the goods, chattels and credits which have come to his *hands, pos-
session* or knowledge." But the argument proves too much, as
it would equally subject to his power, without possession had, and
bind him to account for, all the effects that had come to his know-
ledge wherever situate. Our act is, however, a transcript of the
*British Statute* which has no such operation on assets in Ireland
though that kingdom was always politically connected with *Eng-
land* by ties as intimate as those which connect the states of our
Union. The legislature intended to usurp no jurisdiction but sim-
ply to make the effect of the bond co-extensive with the limits of
its own authority. But the doctrine now asserted is not new even
here, being the foundation of the judgment in *Brodie* v. *Bickley,*
2 *Rawle,* 41. In *Massachusetts* it was recognized in the *Select
men of Boston* v. *Baylston,* 2 *Mass.* 384, and *Dawes* v. *Bayls-
ton, 9 Mass* 347. As then all evidence of the charge ought

to have been excluded, errors in respect of the particular competency of certain parts of it, if such there were, would be immaterial; and this relieves us from a consideration of any point made here but one, and that is to be disposed of in a few words. The issue was framed to determine, not the validity of particular items, but the aggregate amount of the debts properly chargeable; and to this end it was the business of the jury to find the exact sum. The Judge however was of opinion that the issue embraced nothing but the disputed items, and directed a general verdict for the defendant, which, if suffered to stand, would exclude a large sum admitted to be properly chargeable. For this reason the judgment is not sustained.                   Judgment reversed.