EGE *v*. P. & R. KOONTZ.

3 109
26 SC 650

One, who voluntarily pays money by mistake to another who claims it as a debt, may recover it back, only where the payment was made in a mistake arising from misconception, error or ignorance of fact, and not where he alleges a mistake of the law merely.

One person will not be allowed gratuitously to alter the position of another and affect his rights and liabilities, by voluntarily assuming to understand his own legal duties, and after paying a claim on the footing of such assumption, to draw it into question upon the allegation of a mistake of his duty.

The legal effect of an attachment laid upon a debt is, to restrain the garnishee from paying over the money, either to his individual creditor or to the attaching creditor, until the attachment is disposed of, and then only according to the result of that proceeding.

Where, after the service of the attachment, the individual creditor of the garnishees filed his petition, and was subsequently declared a bankrupt; it became the duty of the garnishees to notify the assignee of such bankrupt of the attachment, to enable him, if he claimed the money, to become a party to it, and then wait its determination.

But where the garnishees paid over the money to such assignee while the proceedings on the attachment were pending, and gave no notice of the attachment to the assignee until after he had filed his account in the United States Court, charging himself with the money, a period of nearly two years from the time he received the same; it was *held*, that under the circumstances such a case of laches on the part of the garnishees was presented, as would go far to deprive them of the right to recover back the money, even had it been paid under a mistake of fact.

A subsequent promise by the assignee to pay the money back, if there were a consideration for it, amounted to no more than a consent to return the same, if under the circumstances he would be justifiable in doing so.

ERROR to the Common Pleas of Cumberland county.

*June 5.* P. & R. Koontz, the defendants in error, who were plaintiffs below, brought debt to recover back money paid voluntarily by them, but, as it was alleged through mistake of legal duty, to Peter F. Ege, the defendant, who claimed it as a debt due to his assignor in bankruptcy.

By consent, the facts given in evidence on the trial were considered as found by the jury, subject to the bills of exceptions taken on both sides to the admission and rejection of evidence; and the court to enter judgment for either party as if found by the jury, with liberty to either party to sue out a writ of error.

It appeared from the opinion of the court, (HEPBURN, President,) that the facts in evidence were these:

On the 29th of October, 1841, P. & R. Koontz gave their note at twelve months, to William Snodgrass, for $660, upon which $200 were paid on the 19th of April, 1842. On the 12th of May, 1842, a *fi. fa.* and attachment issued from the Common Pleas of this county, at the suit of the Carlisle Bank against William Snodgrass;

K

and the plaintiffs in this action, with R. Snodgrass, jun., were, on the 14th of May, 1842, summoned as garnishees. Subsequent proceedings were had in court on this attachment, which resulted in a judgment against the Koontzes for the amount still due by them on this note, which was collected by an execution issued the 21st October, 1844. Previously to the payment of the money on the execution, but after the service of the attachment, to wit, the 30th May, 1842, William Snodgrass filed his petition for the benefit of the bankrupt law, and was declared a bankrupt the 11th of July, 1842; and on the 25th of July, 1842, Peter F. Ege was appointed his assignee. Between the 29th of October and the 2d of November, 1842, R. Koontz paid Mr. Ege the balance due upon this note, and lifted it from his possession. Discovering his error shortly afterwards, he called upon Mr. Ege, and told him perhaps he had made a mistake in paying him the money, to which Mr. Ege replied, that if it were wrongfully paid to him, he would pay it back, if he were justifiable under the circumstances in doing so. The money was not returned to the Koontzes, and this action has been brought to enforce it.

It also appeared, that interrogatories under the proceeding by attachment were filed, and copies thereof served upon the garnishees on the 24th of August, 1844. On the 20th of August, 1844, the following notice was served upon Peter F. Ege as assignee of William Snodgrass, by the counsel of P. & R. Koontz:

" Interrogatories have been filed and served upon Philip Koontz and Robert Koontz, as garnishees under a proceeding by attachment, at the suit of the Carlisle Bank against William Snodgrass. The said Koontzes have answered, that they paid the money to you as the assignee in bankruptcy of said Snodgrass; and the attorney of the said bank will ask the court for a judgment against the said P. & R. Koontz, on the ground that the money was attached, and the right vested in the bank before the bankruptcy. In the event of a recovery of the money from the Messrs. Koontz, they will look to you to refund the money; and if you desire to contest the right of the bank, you can do so."

Ege did not appear to contest the right.

The defendant offered in evidence the petition of William Snodgrass for the benefit of the bankrupt laws, and schedule of his property, with proof that the only amount of the same that he could collect was the money in dispute; that the other notes, &c., mentioned in the schedule, being on insolvent persons, were not collectable. To be followed up with proof of the citation issued at the instance of the plaintiffs, and the account filed by the assignee in the United

States Court, in pursuance of said citation. The petition and schedule, embracing the note of P. & R. Koontz, of the 29th of October, 1841, for $660, as aforesaid, were read without objection. The rest of the offer objected to, and rejected by the court. This was defendant's first bill of exception.

The defendant then offered his account filed in the District Court, which was objected to, and rejected by the court. This constituted defendant's second bill of exception.

It appeared that the money received from P. & R. Koontz was the only charge in the said account.

The court gave judgment for the plaintiffs, upon the facts in evidence.

Against the right of the plaintiffs to recover, two legal grounds were assumed by the defendant in the court below.

1. That the money was paid to Ege, after the attachment was served, and Ege was the agent of the creditors of Snodgrass. P. & R. Koontz had a knowledge of the facts, and if ignorant of the law, they paid the money to a man who may hold it in good conscience, and it cannot be recovered back.

2. Any promise made by Ege at a subsequent period, without consideration, cannot entitle the plaintiffs to recover.

The defendant took this writ of error, and assigned the following errors here :—

1. The court erred in rejecting defendant's offer as per first bill of exceptions.

2. They erred in rejecting defendant's offer as per second bill of exceptions.

3. They erred in rendering judgment for plaintiffs, upon the facts in evidence considered as found by the jury, and embraced in opinion filed.

*Gaullagher* and *Biddle*, for plaintiff in error.—It is well settled in England and in this country, that a voluntary payment, made with a full knowledge of the *facts*, but an ignorance of the *law* or *legal* effect of the circumstances, cannot be recovered back. Chitty on Contracts, edition of 1844, p. 627; 2 East, 469; 5 Taunt. 143; 1 Barn. & Adol. 123; 6 Barn. & Cres. 671; 1 Esp. 84, 279; 4 Term Rep. 561, 564; 2 Esp. 546, 723; 2 Comyn on Contracts, 40; 6 Watts & Serg. 486; 7 Watts & Serg. 457; 1 Wend. 360; 9 Cowen, 684. The cases show that the defendant may hold in *conscience*, unless he has been guilty of *fraud* or *misrepresentation*.

When a suit is brought for an *unjust and unfounded* demand, and

not prosecuted to judgment, if paid by the defendant without fraud or misrepresentation on the part of the plaintiff, it is viewed as a voluntary payment, and may be retained by the party to whom it is paid. See cases in note to Chitty on Contracts, 639 a.   An administrator or executor, voluntarily paying a simple contract debt, cannot recover the same, should the estate prove insufficient to meet that class of claims.   2 Rawle, 120 ; 2 Watts, 414.

As to the promise of Ege, it would not bind him if positive. 7 Watts, 420 ; 1 Whart. 66 ; 1 Comyn on Contracts, 18 ; 2 Pothier, 21 ; 7 Term Rep. 348, 350 : but it was a conditional promise, " that he would pay the money back if he was justifiable in doing so under the circumstances." Whether he would be justifiable, should be determined by the District Court of the United States, which has jurisdiction of Ege's account.   It would be unfair to Ege to permit Koontz to recover in a state court the money paid by him voluntarily, and leave Ege, who is innocent in the whole transaction, liable to the risk of being charged in the United States Court with the amount so recovered.

*Reed* and *Watts*, for defendants in error.—The copy of the account filed by the assignee in the United States Court, in pursuance of a citation, offered in evidence by the defendant below and objected to by the plaintiffs, was properly rejected by the court.   It was not a settled account.   It was a mere extract of a paper presented by the defendant to the court, dated in 1844.   It was no copy of any record ; it was irrelevant, and done after notice and after parties' rights were fixed.

There was no error committed by the court, in rendering judgment for the plaintiffs upon the facts in evidence.   The lien of the plaintiffs attached on the 14th of May, 1842.   They cited Park & Johns. Dig. as to the mode of proceeding in levying upon, and taking in execution *debts due,* &c.   Their lien, which had attached, was preserved by the bankrupt law.   Bank. Act, p. 16, sec. 2. Jurisdiction having attached in the state courts must be carried out therein.   The account offered could neither affect the question of lien, or of jurisdiction.   Then, had Peter F. Ege, the defendant, any right either to recover or retain the money ?   The District Court of the United States had no jurisdiction until petition was presented on the 30th of May, 1843.   Bank. Act, 39, 37, 51.   This gave no jurisdiction to the court, no right to the creditors of Snodgrass, or to the defendant, Ege, to the fund in question.   It was not assigned or transferred by the bankrupt law.   The defendant below, Ege, never

was the assignee of Snodgrass, as to this fund. The creditors never had any right to this fund. If the defendant could retain it, it would be for himself. This fund could not pass by the *decree,* nor by the petition; for both were after the service of our attachment, and after our lien had attached.

Bankrupt's property liable to distress by landlord, between the acts of his petition and his being declared a bankrupt: Babb *v.* Morgan, 8 Watts & Serg. 53. If liable to distress, then it is also liable to any other lien. 1 Barr, 426, 427. If Ege had no right to claim, he had no right to receive. If he could not recover, he could not retain. It was a mistake in fact, as to the *time* when Snodgrass presented his petition for the benefit of the bankrupt act. A man is presumed to know the law, but not the facts.

Had the party a right in conscience to receive? Trevor *v.* Wall, 1 Term Rep. 286, 287 ; Wait *v.* Ligget, 8 Cowen, 195 ; Wheadon *v.* Olds, 20 Wend. 174. To deprive a party of his action for money paid voluntarily beyond what is due, on the ground of knowing it was not due, it must appear that it was paid with a full knowledge it ought *not* to be paid. 5 Ham. 536 ; 17 Mass. 380 ; 7 Pick. 46 ; Chitty on Contracts, 628. The defendant, Ege, was bound by his promise to refund. There was a moral obligation coupled with his promise.

*June* 11. SERGEANT, J.—The general principle, that a person who voluntarily pays money to another claiming it as a debt, may recover it back again where it turns out to have been paid by mistake, is recognised by our law, as the decided cases fully establish, only where the mistake is owing to misconception, error, or ignorance of fact. Where the party alleges merely a mistake of the law, the maxim applies *ignorantia juris neminem excusat.* One person is not allowed gratuitously to alter the position of another, and affect his rights and liabilities, by voluntarily assuming to understand his own legal duty, and paying a claim on the footing of such assumption, and then drawing it into question upon the allegation of a mistake of his duty. It would not only encourage negligence and rashness, but might in many instances have an injurious operation on the rights of others, if permitted. If these considerations operate in respect to individuals, they apply with still more force to transactions in which the party is acting in a legal character. Thus, it has been held, that from the confusion, inconvenience, and general uncertainty that would prevail, an administrator who has voluntarily paid money within the year to a creditor of the intestate for a just

debt, cannot recover it back on account of deficiency of assets afterwards appearing. Carson *v.* McFarland, 2 Rawle, 118. So in the case before us, when the plaintiffs paid this money to the defendant, they stood in the situation of stakeholders. An attachment had been previously laid on the debt due by them to Snodgrass, the legal effect of which was to restrain them from paying over the money to either claimant, until the attachment was disposed of, and then only according to the result of that proceeding. The rights of the Carlisle Bank, the attaching creditor, and Snodgrass or his assignee, Ege, were virtually *sub judice,* and were regularly to be settled by that proceeding. As the assignee claimed the money, he might, and perhaps would have become a party to the issue, and for this purpose it was the duty of the garnishees to notify him of the attachment, and to wait its determination. Instead of doing so, they go out of their way, and whilst it is pending, pay over the money to the assignee. This was calculated to turn the assignee aside from any intervention in the attachment. In addition to this, it appears, that the assignee filed his account in the District Court of the United States, to which he was cited by the plaintiffs, charging himself with this money; and that no notice of the attachment was given to him by the garnishees till August, 1844, nearly two years after he had received the money. Under these circumstances, it appears to us there were such laches on the part of the garnishees as would go far to deprive them of the right to recover back the money by suit, even had it been paid under mistake of fact. But there is no pretence of this. The subsequent promise, if there was a consideration, seems to amount to no more than a consent to return the money, if, under the circumstances, he was justifiable in so doing, which leaves the matter very much where it stood before.

Judgment reversed, and judgment for defendant below.