**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KEVIN JOHNSON,

      Defendant - Appellant.

No. 10-3143
(D.C. No. 2:09-CR-20125-CM-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

Defendant-Appellant Kevin Johnson entered a conditional plea of guilty to possession with intent to distribute more than 50 grams of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and was sentenced to 240 months' imprisonment and ten years of supervised release. He now appeals the district court's denial of his motion to suppress, arguing that the evidence underlying his guilty plea flowed from an unlawful detention. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Background

On September 18, 2009, a SWAT team executed a search warrant on Lot 15 of a mobile home park in Atchison, Kansas. 2 R. 90-93; Supp. R. 66-67. The warrant authorized search for methamphetamine, firearms, and drug paraphernalia. Supp. R. 66. In the course of securing the perimeter, officers came across a woman sleeping on the ground between two parked cars approximately 100 feet north of the trailer. 2 R. 44, 168; Aplee. Br. Attach. G. The officers detained the woman with handcuffs. 2 R. 44. Inside one of the cars, officers noticed a man—Mr. Johnson—lying in the backseat entirely covered with a blanket. Id. at 95-96. An officer knocked on the vehicle's window with the barrel of his submachine gun. Id. at 96, 106. After Mr. Johnson woke up and unlocked the car door, he was pulled out of the car, handcuffed, and placed face down on the ground. Id. at 97-98. Mr. Johnson refused to give permission to search the car, and he remained handcuffed while the officers ran a drug-sniffing dog around his car. Id. at 117-18, 144. The dog alerted, and officers discovered 250 grams of methamphetamine in a subsequent search. Id. at 142-43. They then arrested Mr. Johnson for possession of methamphetamine.

Mr. Johnson's car was parked partially on and partially off the road that formed the apparent boundary of Lot 15—the drivers' side tires were on the road, while the passengers' side tires rested on the edge of the yard. Supp. R. 50. Neither party introduced evidence of Lot 15's legal boundaries, but the district

court concluded that the "defendant's vehicle was parked on the premises of Lot 15." Id. at 51.

The record does not reveal the amount of time between Mr. Johnson's detention and arrest. However, the canine unit was on the scene from the outset, 2 R. 120, and Mr. Johnson was removed from the scene before the search concluded. Id. at 30. The search of the premises lasted an hour and a half. Supp. App. 53.

Discussion

On review of a denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error, with the evidence viewed in the light most favorable to the government. United States v. Carbajal-Iriarte, 586 F.3d 795, 799 (10th Cir. 2009) (citation omitted). On appeal, Mr. Johnson makes two arguments: (1) that his detention exceeded the scope of Michigan v. Summers, 452 U.S. 692 (1981), and (2) that the officers' display of weapons and use of handcuffs violated the Fourth Amendment. Aplt. Br. 19. Although at oral argument the parties disputed whether the district court found that Mr. Johnson's car was parked on Lot 15, Mr. Johnson failed to raise that issue in his briefs and we will not address it here. See, e.g., Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007). Mr. Johnson challenges the lawfulness of his detention, not any aspect of the subsequent searches or arrest.

A.    Scope of Detention.

First, Mr. Johnson argues that his detention exceeded the scope of those permitted under Michigan v. Summers.  Aplt. Br. 12.  According to Mr. Johnson, because his detention continued after officers knew he did not pose a threat and was not connected to the trailer, "[n]one of the interests identified in Summers were served" and continued detention violated the Fourth Amendment.  Aplt. Br. 13.  In essence, this is an argument that the holding of Summers—that police may detain occupants of a premise while executing a search warrant, Summers, 452 U.S. at 705—extends only insofar as officers can identify one of the three interests served by detention set forth in Summers.  See Aplt. Br. 14-15.  In Mr. Johnson's view, police must continuously monitor the situation and release a detainee once the interests are no longer, in fact, served—regardless of how long it takes to execute the search warrant.  Id. at 16.

In Summers, the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  Summers, 452 U.S. at 705 (emphasis added) (footnote omitted).  In the Court's view, where a neutral magistrate had already issued a warrant to search the premises, the additional intrusion of detention during the search was minor.  Id. at 701-03.  The Court identified three governmental interests in opposition to the minor intrusion: (1) "preventing flight in the event that

- 4 -

incriminating evidence is found;" (2) "minimizing the risk of harm to the officers;" and (3) "orderly completion of the search." Id. at 702-03. Balancing the governmental interests and the intrusion, the Court concluded that detention for the duration of the search was constitutionally reasonable. Id. at 705.

The Court adopted a bright-line rule, not an ad hoc balancing test—"the [detaining] officer is not required to evaluate either the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." Id. at 705 n.19. The bright-line nature of Summers was confirmed in Muehler v. Mena, 544 U.S. 93 (2005). There a SWAT team executed a search warrant on the house where Ms. Mena was sleeping. Muehler, 544 U.S. at 95-96. The SWAT team entered her bedroom, handcuffed her at gunpoint, and confined her in a backyard garage for the duration of the search, which lasted two or three hours. Id. at 96, 100. In a subsequent civil rights action, Ms. Mena claimed that she was detained in violation of the Fourth Amendment. Id. at 96. The Ninth Circuit agreed and held that "the officers should have released Mena as soon as it became clear that she posed no immediate threat"—an argument very similar to the one made here. Compare id. at 97 with Aplt. Br. at 14-15.

The Supreme Court reversed, noting that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Muehler, 544 U.S. at 98 (quoting Summers, 452 U.S. at 705 n.19) (emphasis

added). Because the rule is categorical, Mena's "detention for the duration of the search was reasonable under Summers because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search." Id.

In light of Summers and Muehler, Mr. Johnson's first argument is unavailing. As long as a person is an occupant of the premises identified in a search warrant, officers have "categorical" authority to detain him or her for the duration of the search. Id. at 98. Whether the detention in fact facilitates one of the governmental interests acknowledged in Summers—preventing flight, minimizing risk, or completing the search in an orderly manner—is irrelevant.

That one officer intended to detain Mr. Johnson for investigative purposes is of no consequence. See Aplt. Br. at 14. The relevant question is whether the officers have the authority to detain a citizen—not their subjective intent in doing so. United States v. Lara-Garcia, 478 F.3d 1231, 1234 (10th Cir. 2007).

Mr. Johnson also argues that detention authority under Summers extends only to persons present in a home or structure identified in the search warrant, or to persons who have a demonstrable connection to that home or structure—but not to everyone present on the property. Aplt. Br. 16. In essence, this is an argument that Mr. Johnson's presence on the property, without more, does not make him an "occupant" subject to detention under Summers. However, our precedent forecloses this argument. In United States v. Sanchez, 555 F.3d 910, 917-18

(10th Cir. 2009), we held that "the authority to detain [under Summers] relates to all persons present on the premises." Id. at 918 (emphasis added) (citation omitted). While it is true that in Sanchez the detainee was affirmatively engaged with the resident of the home, id. at 915, the definition of "occupant" established in that case applies here.

Mr. Johnson does not argue that he was not present on the premises. Even if he did, the district court found that he was sleeping in his car parked on Lot 15 when officers arrived to execute the warrant. Supp. R. 51. This factual finding is not clearly erroneous, and we would not disturb it on appeal even if properly challenged. See Carbajal-Iriarte, 586 F.3d at 799. Therefore, because Mr. Johnson was a "person[] present on the premises" identified in the search warrant, Sanchez, 555 F.3d at 918, his detention—which did not exceed the time required to execute the search—did not violate the Fourth Amendment.

B.     Manner of Detention.

Second, Mr. Johnson argues that "the highly invasive manner of Mr. Johnson's detention was constitutionally unreasonable" and "exceeds the manner of detention authorized by Summers." Aplt. Br. 11. According to Mr. Johnson, the officers' display of firearms and use of handcuffs converted his detention into a full-fledged arrest, not the sort of "less intrusive" seizure authorized by Summers. Aplt. Br. 20; Summers, 452 U.S. at 697.

This argument is unavailing in light of Muehler. As mentioned above, in

Muehler a SWAT team forcefully entered the room in which Ms. Mena was sleeping and "placed her in handcuffs at gunpoint." Muehler, 544 U.S. at 96. Officers took her outside to a garage, where she was kept in handcuffs for the entire two- to three-hour search. Id. She was released only upon completion of the search. Id.

The Supreme Court held that the manner of Ms. Mena's detention did not violate the Fourth Amendment. Id. at 98. At the outset, the Court noted that "[i]nherent in Summers' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." Id. at 98-99 (citation omitted). The Court balanced the additional intrusion imposed by handcuffs against the governmental interest, and found that the use of handcuffs was reasonable under the circumstances. Id. at 99. Of particular relevance, the Court noted the government's strong interest in using handcuffs where the warrant authorizes search for weapons—"[i]n such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants. Though this safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs, the need to detain multiple occupants made the use of handcuffs all the more reasonable." Id.

Similar inherently dangerous circumstances are present here. The warrant authorized search for methamphetamine and firearms, and officers testified that the high level of traffic in the area made the search particularly dangerous. 2 R.

91-92.  Like in <u>Muehler</u>, officers encountered and detained multiple persons on the property.  Supp. R. 53-54.  Accordingly, this was an inherently dangerous situation that justified the officers' display of firearms and use of handcuffs—just as in <u>Muehler</u>.  <u>Id.</u> at 53 (district court's conclusion).

Mr. Johnson attempts to distinguish <u>Muehler</u> based on its extraordinary facts.  Aplt. Br. 21.  However, the facts are actually quite similar to those here: in both cases, the warrant authorized search for weapons, the detainees were awakened by SWAT teams at gunpoint, and were placed in handcuffs for the duration of the search.  <u>See</u> <u>Muehler</u>, 544 U.S. at 96.  Given the similarities, we see no basis for a different outcome.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge