UNITED STATES of America,
Plaintiff—Appellee

v.

Daniel James HODULIK, Defendant—
Appellant

No. 00–6300.

United States Court of Appeals,
Sixth Circuit.

June 26, 2002.

Before GUY and BATCHELDER, Circuit Judges; WALTER, District Judge.*

WALTER, District Judge.

## I. INTRODUCTION

Defendant–Appellant, Daniel James Hodulik, a/k/a Daniel James Wernham (here-

inafter "Hodulik" or "Appellant"), appeals his June 29, 2000 criminal conviction and sentence for illegal re-entry after deportation, in violation of 8 U.S.C. § 1326. Hodulik challenges his conviction and/or sentence, asserting that the evidence was insufficient to support the alienage element of his conviction; that the district court abused its discretion in admitting certain evidence, particularly findings of the immigration law judge; and that his enhanced sentence based upon a prior "aggravated felony," which was neither alleged in the indictment nor presented to the jury, ran afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This Court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirms both the conviction and the sentence.

## II. BACKGROUND

On February 16, 2000, a federal grand jury issued a one-count indictment against Hodulik, for being found in the United States after being deported on July 13, 1993 at Dallas, Texas, and not having obtained express consent of the Attorney General to re-apply for admission thereto, in violation of 8 U.S.C. § 1326. The indictment did not allege the existence of any prior aggravated felony conviction. On February 24, 2000, the government filed a Notice of Sentencing Enhancement based upon a prior conviction for larceny, thereby triggering 8 U.S.C. § 1326(b)(2) and increasing the maximum term of imprisonment from two (2) years to twenty (20) years.

Prior to trial, the government filed a motion in limine, which sought to prevent Appellant from collaterally attacking the

---

* The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

legality of his prior deportation proceedings in front of the jury. Hodulik opposed the motion and the government replied. The district court granted the government's motion.[1]

Hodulik proceeded to trial on June 29, 2000. Appellant was alleged by the prosecution to be a thirty-four (34) year old Canadian national, who had extensive contact with the United States Immigration and Naturalization Service (hereinafter "INS"). At trial, two different birth certificates were produced, showing the same date of birth—November 18, 1967, and the same place of birth—Ontario, Canada, for two different last names—Hodulik and Wernham.

The official records of Hodulik's contact with INS and law enforcement are contained in his Alien Registration File (hereinafter "A–File"). Using a summary chart, INS Special Agent John Bagocus testified as to the contents of Hodulik's A–File. Appellant's first contact with INS was on August 5, 1974, when he was admitted on a visitor's pass to the United States, with his natural father (Wernham). Subsequently, his natural father's parental rights were terminated, and Appellant became a ward of the State of Ohio. Appellant was then adopted by the Hoduliks in 1979 at the age of ten (10). On July 7, 1983, at the age of fifteen (15), Hodulik voluntarily departed the United States and went back to Canada. At that time, Appellant signed a form, using his birth name Wernham, to wit: "I acknowledge that I am an alien and I admit that I am illegally in the United States." This admission was introduced into evidence.

Agent Bagocus continued to testify that after his 1983 departure, Hodulik attempted to reenter the United States on April 29, 1986, but was refused entry. Sometime later, Appellant reentered the United States without permission and was deported on July 12, 1988 through the Port of Pittsburgh, Pennsylvania. The concurrent Warrant of Deportation, dated July 11, 1988, was introduced into evidence.

Hodulik apparently re-entered the United States a second time without permission, as on September 20, 1990, INS served him with an Order to Show Cause (hereinafter "OSC") pertaining to his illegal presence in this country. On November 29, 1991, INS arrested Hodulik and commenced deportation proceedings against him pursuant to a Superseding OSC. The OSC was introduced into evidence and stated that Appellant was a Canadian citizen. On April 29, a deportation hearing was held, at which time Hodulik, through counsel, conceded that he was born in Canada. During the hearing, Appellant did attempt to assert derivative citizenship through his adoption, but the immigration law judge found that his adoptive relatives did not take the proper steps to establish his U.S. citizenship. Consequently, the immigration judge rejected Hodulik's derivative citizenship argument and ordered that he be deported. A copy of this hearing was introduced into evidence. Hodulik appealed to the Board of Immigration Appeals and to the United States Court of Appeals for the Fifth Circuit, where the order of deportation was upheld.[2] In July 1993, INS issued a Warrant of Deportation and put him on a plane

---

1. It is notable that the "Order," granting the government's motion in limine, did not limit Hodulik from challenging the issue of alienage at trial, but rather prevented him from addressing the legality of his prior deportation or any defense relating to a "mistake" of

law or fact or any "good faith" on the part of Appellant regarding the lawfulness of his reentry into the country after deportation.

2. *See Hodulik v. INS,* 1 F.3d 1238 (5th Cir. 1993) (summary affirmance of the BIA).

bound for Toronto, officially deporting Hodulik a second time.

INS District Adjudications Officer Colleen Crenshaw testified as to Hodulik's citizenship status. She explained the potential avenues for derivative citizenship, that Hodulik never met the criteria, and testified that Appellant's A–File simply shows that he is a Canadian citizen. Officer Crewshaw conceded that as a ward of the state, an orphan would be in a state of "limbo" because he could not leave as a ward of the state but had no legal right to stay in the country.[3] At the time there was no provision for automatic citizenship of an adopted child, as there is currently.[4]

Agent Bagocus testified that in December 1999, he learned that Appellant might be the same person held by the Roane County Sheriff's Department under the name of Daniel James Wernham. Agent Bagocus went to Roane County, Tennessee, and obtained the detainee's fingerprint card. Officer Fay Hall of the Roane County Sheriff's Department testified that she received a detainer from INS, asking her to hold defendant until INS could investigate his immigration status and that the detainee received more than one telephone call from the Canadian Consulate. Officer Hall also confirmed the production of the detainee's fingerprints to INS and identified him as the person depicted in Appellant's A–File photograph. Officer Debbie DeGregorio of the Knox County Sheriff's Department testified that after a study of two sets of fingerprints, she determined that the alien deported by INS on July 13, 1993 and the individual held by Roane County were one in the same—the Appellant.

At the close of the government's case, Hodulik moved for a judgment of acquittal on the grounds that the proof failed to establish alienage and that the government did not plead or prove the existence of a prior conviction of an aggravated felony, as required under 8 U.S.C. § 1326(b)(2) and *Apprendi.* The district court denied the motion on the alienage element but took the *Apprendi* issue under advisement, allowing the parties time to submit written briefs on the matter. The record indicates that the issue of whether Hodulik had been convicted of an aggravated felony was not placed before the jury—neither in evidence, jury instructions or interrogatories. After considering the parties written briefs on the *Apprendi* issue, Appellant's motion for acquittal was denied.

At Appellant's sentencing hearing, the government presented proof of Hodulik's prior aggravated felony (larceny). Hodulik renewed his *Apprendi* objection to the increased sentence, which was overruled. The district court adopted the calculations and factual findings in the Pre–Sentence Report detailing Appellant's criminal history. The applicable guideline range of imprisonment was determined to be 100 to 125 months. Hodulik filed a motion for downward departure based on a number of factors, including, a history of abuse, abandonment, witnessing his mother's murder, and his mental condition. Over the government's objections, the court granted the motion for downward departure, reducing Hodulik's sentence to seventy-two

---

3. In regards to citizenship, this was a "Catch-22" of sorts, but has now been legislatively remedied. Previously, under 8 U.S.C. § 1431, a parent, spouse, brother or sister could petition for citizenship of an adoptee under eighteen years (18) of age. Alternatively, under 8 U.S.C. § 1432, derivative citizenship would have been bestowed on Hodulik only if the adoption had been relinquished and his natural father had resided in the United States. The record did not support either of these occurrences.

4. *See* amended 8 U.S.C. § 1432 (2000) and *supra* note 6.

(72) months incarceration to be followed by two (2) years of supervised release.[5]

## III. ANALYSIS

### A. Sufficiency of the evidence

Hodulik argues that the government presented insufficient evidence to support his conviction under 8 U.S.C. § 1326(a). When reviewing a challenge to the sufficiency of the evidence presented to the jury, we are limited to a determination of whether, viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Carmichael,* 232 F.3d 510, 519 (6th Cir.2000).

■ The elements of 8 U.S.C. § 1326(a) are straightforward and require the government to prove: 1) the defendant is an alien; 2) who previously was arrested and deported or excluded and deported; and 3) thereafter improperly entered, or attempted to enter, the United States (without the permission of the Attorney General). *See United States v. Meza–Soria,* 935 F.2d 166, 168 (9th Cir.1991). Hodulik only challenges the sufficiency of the government's proof as to alienage, not as to the elements of prior deportation or subsequent re-entry.

The government produced, *inter alia,* Appellant's A–File, his admission of Canadian citizenship, his Canadian birth certificates, a 1993 Order and Warrant for his Deportation, testimony that he received calls from the Canadian Consulate while in custody, and testimony concerning the means by which Appellant could have obtained citizenship or lawful permanent resident status, but which were not met. Based on the evidence presented at trial, the jury could have concluded beyond a reasonable doubt that Hodulik was a citizen of Canada—an "alien," for purposes of 8 U.S.C. § 1326.

■ Hodulik also claims that the government failed to prove he was not entitled to derivative citizenship.[6] While a defendant may assert, and a jury may reject, the defense of derivative citizenship, lack of entitlement to such citizenship benefits is not an element of an illegal re-entry after deportation charge.[7] Simply put, the government was required to prove alienage, but did not have the burden of proving Appellant's "lack of derivative citizenship status." The district court properly addressed this issue, raised in the government's motion in limine, when it estopped Hodulik from utilizing derivative citizenship to collaterally attack the legality of his prior deportation, while allowing him to rebut the government's assertion of his

---

**5.** Though the government objected to defendant's motion for downward departure it did not appeal the court's decision to so depart.

**6.** In regards to the claim of derivative citizenship, Appellant also argues that he should benefit from the recent amendment to 8 U.S.C. § 1431 (2000). The amendment, effective 120 days after October 20, 2000, allows for automatic citizenship of adopted children who are under eighteen (18) years of age. 8 U.S.C. § 1431 (2000) only applies to individuals who satisfy the listed requirements on or after the effective date of the statute. Hodulik

was clearly not under eighteen (18) years of age on or after the effective date of this legislation. Therefore, this argument is without merit. In addition, the recent amendments exclude persons with certain criminal backgrounds from claiming these privileges. *See Way v. INS,* 2 Fed.Appx. 758, 2001 WL 65688 (9th Cir.2001).

**7.** *See* discussion in *United States v. Garcia–Mancha,* 2:96–CR–0021, 2001 WL 282769, at *5 (N.D.Tex. March 15, 2001).

alien status via a demonstration of derivative citizenship.[8]

Based on the evidence presented at trial, the jury could have concluded beyond a reasonable doubt that Hodulik was a citizen of Canada—an "alien" for purposes of 8 U.S.C. § 1326.

## B. Findings of the immigration law judge

██ Hodulik argues that the district court abused its discretion in admitting INS documents, which reflected factual findings made by the immigration law judge during civil deportation proceedings. Hodulik asserts that admission of this evidence, regardless of its probative value, caused him undue prejudice and that a limiting instruction should have been given.

Appellant does correctly note that there are different burdens of proof utilized in civil deportation proceedings and criminal trials. Recognizing that the "clear and convincing" burden is not the same as proof beyond a reasonable doubt, it would be improper to establish alienage, under 8 U.S.C. § 1326, solely through the use of factual findings in the deportation hearing. *See United States v. Meza–Soria,* 935 F.2d 166, 169–70 (9th Cir.1991). Nonetheless, this simple observation does not countenance an absolute ban on such evidence.

In this case, the more detailed oral decision of the Immigration Law Judge, which is potentially more prejudicial, was not introduced. Rather, a one-page "Form EOIR–7," referred to as a "Summary Decision of Immigration Judge," was admitted. The primary substance of which was as follows: "Upon the basis of respondent's admissions I have determined that

he is deportable on the charge(s) in the Order to Show Cause.... ORDER: It is ordered that respondent be deported from the United States to Canada on the charge(s) contained in the Order to Show Cause." Such evidence is highly relevant to prior deportation and while neither the "Form EOIR–7," nor an order of deportation, standing alone, would constitute sufficient evidence of alienage, such evidence could be used along with other corroborating evidence, to constitute sufficient independent evidence of alienage. *See United States v. Hernandez,* 105 F.3d 1330, 1333 (9th Cir.1997).

In addition, the jury was instructed as to the differing burdens of proof in administrative and criminal matters, to wit:

> Now, during the trial the Government has presented evidence from various INS proceedings. Specifically, you heard testimony regarding the Immigration Law Judge's decision that the Defendant was a citizen and a national of Canada and a deportable alien. I am instructing you that there is a different burden of proof in INS proceedings. That is, the Immigration Law Judge makes findings based on clear and convincing evidence. This is not the standard in a criminal trial.

> As I have told you, in a criminal trial, the government has the burden to prove each part of its case beyond a reasonable doubt.

Accordingly, the district court did not abuse its discretion in admitting certain factual findings made by the immigration law judge.

## C. The A–File

██ Hodulik contends that the documents located in Hodulik's A–File and in-

---

8. This ruling properly allowed such evidence, but prevented a mini retrial of Hodulik's de-

portation hearing.

troduced at trial were hearsay due to the fact that they were introduced by the investigator and not by the persons who actually generated the underlying documents. The government presses two valid exceptions, that they were public records admissible under Fed.R.Evid. 803(8)(B), as well as INS business records under Fed. R.Evid. 803(6). The exhibits introduced were also certified copies and thus self-authenticating under Fed.R.Evid. 902(4). The trial court did not abuse its discretion in allowing exhibits from Appellant's A–File into evidence.

### D. *Apprendi*

■ Hodulik asserts that the district court violated his constitutional rights to due process and a jury trial, as articulated in *Apprendi*, by imposing an enhanced sentence for prior convictions, which were neither alleged in the indictment nor presented to the jury. We review constitutional challenges to a sentence *de novo*. *United States v. Campbell*, 279 F.3d 392, 397 (6th Cir.2002).

The offense of illegal re-entry of a deported alien prohibits an alien who has been deported from the United States from re-entering the United States without first reapplying to the Attorney General for readmission. 8 U.S.C. § 1326(a). Under 8 U.S.C. § 1326(a), the maximum term of imprisonment is two (2) years. But if the alien's removal was subsequent to a conviction for an "aggravated felony," 8 U.S.C. § 1326(b)(2) provides for a maximum sentence of twenty (20) years. Though this issue was not raised on appeal, the term "aggravated felony" does encompass Appellant's larceny conviction. 8 U.S.C. § 1101(a)(43)(G).

In this case, Hodulik received a sentence above the two-year statutory maximum otherwise applicable to an offense under § 1326(a) due to his prior conviction for an aggravated felony, which would normally trigger the *Apprendi* rule. However, this Court has recently held in *United States v. Aparco–Centeno*, 280 F.3d 1084 (6th Cir. 2002) and *United States v. Becerra–Garcia*, 28 Fed.Appx. 381, 2002 WL 22038 (6th Cir.2002), in similar circumstances and consistent with *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that a prior conviction for an aggravated felony under § 1326(b)(2) is not an element of an offense under § 1326(a), but rather is a sentencing factor to be determined by the sentencing court. *Aparco–Centeno* and *Becerra–Garcia* also noted that the Supreme Court specifically excluded *Almendarez–Torres* from the rule which it announced in *Apprendi*. *Aparco–Centeno*, 280 F.3d at 1088; *Becerra–Garcia*, 28 Fed. Appx., at *3.

We are aware that in *Almendarez–Torres*, *Aparco–Centeno* and *Becerra–Garcia*, the defendants had pled guilty to the underlying charge of unlawfully reentering the United States after deportation, and that in this case Appellant was convicted by a jury. Nonetheless, there is no tenable reason why this distinction should change our prior analysis of the issue. Just as in *Aparco–Centeno*, the "core of [Hodulik's] appeal is whether § 1326(b) is a separate offense or merely a sentence enhancement for recidivism. *Almandarez–Torres* held it was an enhancement for recidivism and not an additional element that must be pleaded and proved beyond a reasonable doubt." *Id.* at 1090.

Consistent with our prior holdings, we find that this case rests in the exception carved out for *Almendarez–Torres* by *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2348. Therefore, the indictment sufficiently alleged an 8 U.S.C. § 1326 offense, and the

court lawfully imposed the sentence under 8 U.S.C. § 1326(b)(2).[9]

## IV. CONCLUSION

We have considered all of Hodulik's arguments on appeal and find no grounds for reversal. Accordingly, we affirm Hodulik's conviction and sentence.

9. In any event, the Supreme Court has recently reiterated, in the context of an *Apprendi* claim, its long-standing position that "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *United States v. Cotton*, —— U.S. ——, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (*internal quotations and citations omitted*). There is clearly no plain error here.