FILED
United States Court of Appeals
Tenth Circuit

December 7, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JESUS JOSE MEDRANO, a/k/a
Salvador Andrade,

    Defendant-Appellant.

No. 08-1273

(D.C. No. 1:06-cr-00465-REB-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BALDOCK,** and **LUCERO**, Circuit Judges.

Defendant-Appellant Jesus Jose Medrano was involved in unspecified proceedings in Colorado state court when the Adams County District Attorney's office discovered through a background check that Defendant was illegally in the United States. The office informed Immigrations and Customs Enforcement (ICE). ICE Special Agent Travis McFarren searched the ICE database for information about Defendant and discovered several prior removal orders in Defendant's Alien File (A-File). Based on this information, he concluded Defendant was probably an illegal alien.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Agent McFarren and another agent arrested Defendant and transported him to an immigration processing facility. Once at the facility, in order to complete administrative booking Form I-213, Agent McFarren asked Defendant his name, date of birth, city and country of birth, parents' names, and citizenship. Agent McFarren also fingerprinted Defendant and ran his fingerprints through the ICE database, which confirmed that Defendant had been removed from the United States several times before. After completing this process, Agent McFarren advised Defendant of his Miranda rights. Defendant then refused to answer any other questions. A jury subsequently convicted him of illegal reentry after deportation under 8 U.S.C. § 1362(a) and (b)(2).

Defendant raises four issues on appeal. In addition to claiming the Government violated his rights under the Speedy Trial Act (STA), Defendant argues the district court erred in admitting into evidence his pre-Miranda responses to questions about his identity and citizenship, documents from his A-File, and his Mexican birth certificate. We have jurisdiction under 28 U.S.C. § 1291. We hold that Defendant's rights under the STA were not violated and the district court did not err in admitting Defendant's pre-Miranda statements about his citizenship, documents from his A-File, or his Mexican birth certificate. Accordingly, we affirm.

I.

Defendant first contends the Government violated his rights under the STA, which requires that a defendant be tried within seventy days unless such time is

tolled in certain enumerated circumstances. See 18 U.S.C. § 3161. After Defendant

pled not guilty, the court appointed counsel and set the deadline for filing pretrial

motions at January 11, 2007. Defendant's first counsel withdrew, and the court

appointed a second counsel. This counsel received the record in Defendant's case

on January 3, 2007. Counsel filed a motion for extension of time to file pretrial

motions on January 10, 2007, arguing he had insufficient time to review the record

and determine what pretrial motions to file. The court granted the motion on January

12, 2007. The court entered a minute order finding "after [reviewing the motion and

file and] considering the factors at 18 U.S.C. § 3161(h)(8)(B)(i)–(iv) that the ends

of justice served by granting the motion outweigh the best interests of the public and

the defendants in a speedy trial within the meaning of 18 U.S.C. § 3161(h)(8)(A)."

The district court set the new deadline for filing pre-trial motions at February 12,

2007. Accordingly, the court excluded the time from January 12, 2007 to February

12, 2007 from the seventy day STA calculation. Defendant later submitted a *pro se*

motion arguing that because the time period was improperly excluded, his STA rights

were violated. The court struck the motion because Defendant was represented by

counsel.[1]

---

[1] The Government argues Defendant waived his STA rights because his counsel never made an appropriate motion to dismiss for violation of the STA. Even assuming, without deciding, that Defendant's *pro se* motion is sufficient to preserve a claim under the STA, the district court did not violate Defendant's STA rights by excluding the time between January 12, 2007 and February 12, 2007 from the STA calculation.

3

On appeal, Defendant characterizes the district court's order as a continuance, consistent with the district court's citation in its minute order of the continuance provision of the STA, 18 U.S.C. § 3161(h)(8)(A). Defendant contends the court violated his rights under the STA as a result of its failure to articulate detailed ends of justice findings in its order. The Government argues, quite logically, that the district court actually granted an extension of time to file pretrial motions.[2] We held in United States v. Mobile Materials, 871 F.3d 902, 913–14 (10th Cir. 1989), that an extension of time to file pretrial motions is automatically excludable under the STA.[3] Thus, under the Government's construction of the district court's order, Defendant necessarily loses. Nevertheless, because the district court used language indicating it granted an ends of justice continuance and Defendant insists it did so, we give the Defendant the benefit of the doubt and construe the court's order as having granted a continuance in accordance with its terms and Defendant's arguments.

We review a district court's decision to grant an ends of justice continuance for abuse of discretion. United States v. Toombs, 574 F.3d 1262, 1268 (10th Cir. 2009). Under the STA, when a defendant files a not guilty plea, his trial must begin

---

[2] The Government cites 18 U.S.C. § 3161(h)(1)(F). In 2008, Congress renumbered certain STA provisions in Pub. L. No. 110-406, § 13, 122 Stat. 4294 (codified as amended at 18 U.S.C. § 3161). The text to which the Government refers regarding the filing of pretrial motions now appears in 18 U.S.C. § 3161(h)(1)(D).

[3] The question whether an extension of time to file pretrial motions is automatically excludable under the STA is before the Supreme Court this term. United States v. Bloate, 534 F.3d 893 (8th Cir. 2008), *cert. granted* 129 S. Ct. 1984 (2009).

4

within seventy days of the filing date of the indictment or of his first court appearance, whichever date comes last. 18 U.S.C. § 3161(c)(1). The STA excludes from the seventy days certain delays, among them:

> Any period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

Id. § 3161(h)(8)(A). When considering whether to grant an ends of justice continuance, the court must consider, at a minimum, the four factors listed in 18 U.S.C. § 3161(h)(8)(B)(i)–(iv). Particularly relevant here is subsection (iv): "Whether the failure to grant [an ends of justice] continuance in a case which, taken as a whole, is not so unusual or complex . . ., would deny . . . counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." Id. § 3161(h)(8)(B)(iv).

In considering these factors and making ends of justice findings, however, "the district court need not articulate facts which are obvious and set forth in the motion for continuance itself." United States v. Occhipinti, 998 F.2d 791, 797 (10th Cir. 1993) (internal quotations omitted). In Occhipinti, the Government's counsel moved for a continuance because three of his scheduled trials conflicted with the trial dates set by the court. Id. at 798. We held that the following text in the district court's order articulated sufficient ends of justice findings:

> [T]he period of delay resulting from the continuance granted pursuant

5

> to this Order shall be excludable time as provided in 18 U.S.C. § 3161(h)(8) in that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial.

Id. Though the court could have articulated its findings in more detail, such minimal text was sufficient to comply with the STA requirements given the record in that case. Id.

Clearly, the district court in this case did more than the minimum required by Occhipinti. See id. at 797–98. Here, the court explicitly mentioned the factors it was required to consider after reviewing the record and Defendant's file. See id. As we have noted, though "adequate preparation time is a clearly permissible reason for granting a continuance and tolling the [STA], such a reason must be supported by the information and evidence presented to the district court." United States v. Gonzales, 137 F.3d 1431, 1435 (10th Cir. 1998) (internal citations omitted). This is not a case, however, where the court failed to inquire into whether counsel really lacked adequate time to prepare for trial. Compare United States v. Williams, 511 F.3d 1044, 1058 (10th Cir. 2007); Gonzales, 137 F.3d at 1434. Counsel in this case demonstrated his need for additional time to file pretrial motions both by the fact that he had been unable to finish reading Defendant's file and the fact that the deadline for filing pretrial motions was the day after he filed his motion. In addition, this is not a case where the district court failed to indicate on the record that it had considered the appropriate factors, make the appropriate ends of justice balancing,

6

or inquire into the situation allegedly necessitating a delay. Compare Williams, 511 F.3d at 1058; Toombs, 574 F.3d 1271–72. In this case, the court indicated in its order that it had considered the factors in 18 U.S.C. § 3161(h)(7)(B)(i)–(iv) and determined that the ends of justice required a continuance. Because the district court made proper ends of justice findings in its order granting a continuance based on the record, Defendant's STA rights were not violated.

## II.

Defendant next contends that because while completing Form I-213 Agent McFarren asked about Defendant's country of origin without informing him of his Miranda rights, the district court erred in admitting his responses to questions about his citizenship.[4] We review the denial of a motion to suppress such statements de novo but accept the district court's factual findings unless they are clearly erroneous. United States v. Albert, 579 F.3d 1188, 1193 (10th Cir. 2009).

We have held that an agent who asked a defendant questions "to get him to admit his true name," believing the information "would help him determine whether

---

[4] The Government contends Defendant failed to raise this issue below, citing his motion to suppress and noting that it focused on violations of Defendant's Fourth Amendment right against unreasonable seizure. In his motion to suppress, however, Defendant mentioned "his Fifth Amendment right to remain silent," argued his "statements could not pass a test for voluntariness," and concluded "any post-arrest statement made by [Defendant] was coerced by his illegal detention and was not voluntary." Though Defendant's motion argued his statements should be suppressed as fruits of the poisonous tree of his arrest, Defendant did argue that his statements were involuntary and coerced. We again give Defendant the benefit of the doubt and address the merits of his arguments.

7

[the defendant] was in the country illegally" violated that defendant's <u>Miranda</u> rights. <u>United States v. Parra</u>, 2 F.3d 1058, 1067 (10th Cir. 1993) "[W]here questions regarding normally routine biographical information are designed to elicit incriminating information, the questioning constitutes interrogation subject to the strictures of <u>Miranda</u>." <u>Id.</u> at 1068. Therefore, when an agent asks a defendant "about his true name for the direct and admitted purpose of linking [the defendant] to his incriminating immigration file," he violates that defendant's <u>Miranda</u> rights. <u>Id.</u> We have said, however, that questions about a person's identity and the disclosure of a person's name and address are not generally subject to the protections of <u>Miranda</u>. <u>United States v. Lara-Garcia</u>, 478 F.3d 1231, 1235 n.5 (10th Cir. 2007). Typically, "questions as to date and place of birth are normal questions attendant to arrest and custody and do not require a <u>Miranda</u> warning." <u>Id.</u>

This is not a case where an agent asked questions to determine or confirm a person's identity because that identity was unknown. Instead, a state officer informed Agent McFarren that a background check revealed Defendant had an immigration history of prior deportations. The officer gave Agent McFarren Defendant's name, date of birth, and alien number. When Agent McFarren ran the information from the state officer in an ICE database, he discovered that Defendant's file documented prior removals, which gave him a sufficient basis for detaining Defendant. Upon taking Defendant into custody, Agent McFarren asked Defendant his name, date of birth, city and country of birth, and entry point into the United

8

States in order to complete administrative Form I-213. This booking process also included taking Defendant's photograph and fingerprints on an IDENT machine, a biometric identification system. When the IDENT machine processed Defendant's photograph and fingerprints, it confirmed that he had previously been removed from the United States.

In this case, Agent McFarren did not need to confirm the defendant's identity by getting him to admit his name. Instead, he confirmed Defendant's identity by running his name, date of birth, and alien number through the ICE database before taking Defendant into custody and again after arresting Defendant by running Defendant's photograph and fingerprints through an IDENT machine. Rather than tricking Defendant into responding to his "true name" or asking questions designed to determine his identity and illegal status, Agent McFarren asked him for information necessary to complete an administrative booking form after lawfully taking him into custody.[5]

Defendant's statement to Agent McFarren that he was from Mexico was therefore a response to a routine booking question rather than interrogation. The question was posed while Defendant was being booked into an immigration processing facility, his answer was noted on an administrative form used to process

---

[5] In this case, there is no objective evidence suggesting that the agent asked questions regarding Defendant's name and citizenship for the purpose of eliciting incriminating information. Indeed, he did not have to: he already had ample information about and evidence of Defendant's name, citizenship, and prior removals.

all immigrants at the facility, and the agent did not attempt to coerce his response with a view to proving an essential element of a charge or conviction. Therefore, Defendant's <u>Miranda</u> rights were not violated.

### III.

Thirdly, Defendant contests the admission at trial of documents from his A-File, arguing that many of those documents do not qualify for admission under the business records exception. <u>See</u> Fed. R. Evid. 803(6). We review a district court's decision to admit evidence for abuse of discretion. <u>United States v. Bradshaw</u>, 580 F.3d 1129, 1132 (10th Cir. 2009). When we review for abuse of discretion, we do not disturb a district court's evidentiary ruling unless there is a "distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." <u>United States v. Rizvanovic</u>, 572 F.3d 1152, 1154 (10th Cir. 2009).

At trial, the district court admitted documents from Defendant's A-file under the business records exception in Fed. R. Evid. 803(6) and the public records exception in Fed. R. Evid. 803(8).[6] Fed. R. Evid. 803(6) provides for the admission

---

[6] The Government addressed both exceptions in its brief but argues Defendant waived any objections to the admission of the A-File documents under the public records exception because Defendant failed to raise the issue in his opening brief. Defendant argues in his reply brief that his arguments on admissibility under both exceptions are the same. Even if we accept Defendant's contention that he did not waive his objection to the admissibility of the A-file documents as public records, again giving him the benefit of the doubt and reaching the merits of his contentions, the A-file documents are nevertheless admissible under the business records

(continued...)

10

of:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian . . . or by certification that complies with Rule 902(11) . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

We have repeatedly decided that ICE or INS files can be admissible as business records under Fed. R. Evid. 803(6), provided that the individual documents meet the exception's requirements. See United States v. Torres-Reyes, 46 Fed. App'x. 925, 927–28 (10th Cir. 2002) (unpublished) ("While the documents [from the A-File of appellant maintained by the INS] that Appellant contests do contain hearsay, they are admissible because they fall under an exception to the hearsay rule as records of regularly conducted activity pursuant to Fed. R. Evid. 803(6)); United States v. Arroyos-Serna, 17 Fed. App'x. 844, 846 (10th Cir. 2001) (unpublished) (deciding that a district court's decision to admit immigration documents after hearing foundational testimony from three witnesses was not an abuse of discretion). We see no distinction between such immigration documents and the A-file records in this case.[7]

---

[6](...continued)
exception.

[7] We agree with our sister circuits which have also held that immigration or
(continued...)

11

Defendant mentions several specific exhibits in his objections to the admission of A-file documents. Three are Form I-213 Records of Deportable/Admissible Alien. These contain biographical information and data about the manner in which Defendant was apprehended. Two are Form I-216 Records of Persons and Property Transferred. These are lists of aliens transferred from detention centers to Mexico. One is a sworn statement, signed by Defendant, declaring that he was not afraid to return to Mexico. The last two are Property Inventory Forms, one for valuable, the other for non-valuable property. These forms allow aliens to elect not to claim any property that was found on them when they were apprehended.

All of these administrative records are kept in the course of regularly conducted activity by ICE agents. Like the warrants of deportation and other immigration forms at issue in previous cases before us and in our sister circuits, the records in each of these exhibits are kept by ICE as part of their regularly conducted

---

[7](...continued)
A-File documents may be admissible as business records or public records. See United States v. Loyola-Dominguez, 125 F.3d 1315, 1317–18 (9th Cir. 1997) (holding that the district court properly admitted a warrant of deportation, arrest warrant, and order to show cause from a defendant's A-File as public records); United States v. Agustino-Hernandez, 14 F.3d 42, 43 (11th Cir. 1994) (concluding that documents from a defendant's A-File, including a warrant of deportation, an order to show cause, and a Form INS 1-94 were properly admitted under the public records exception without violating the law enforcement provision in Fed. R. Evid. 803(8)(B)); United States v. Hodulik, 44 Fed. App'x. 656, 661–62 (6th Cir. 2002) (unpublished) (affirming the trial court's admission of A-File documents as business records under Fed. R. Evid. 803(6) and public records under Fed. R. Evid. 803(8) without providing a detailed analysis).

activity.[8]  We hold, therefore, that such forms from a defendant's A-File may be properly admitted under the business records hearsay exception in Fed. R. Evid. 803(6).

## IV.

Lastly, Defendant contends the district court wrongly admitted his Mexican birth certificate.  We review a district court's decision to admit evidence for abuse of discretion.  Bradshaw, 580 F.3d at 1132.

At trial, the district court admitted Defendant's Mexican birth certificate, along with a certification from a Vice-Consul of the United States in Mexico, as a record of vital statistics under Fed. R. Evid. 803(9) that was self-authenticating as a foreign public document under Fed. R. Evid. 902(3).  Under Fed. R. Evid. 803(9), "[r]ecords or data compilations, in any form, of births . . . if the report thereof was made to a public office pursuant to requirements of law" are not excludable as hearsay.  Defendant's Mexican birth certificate fits squarely within this hearsay exception.  Fed. R. Evid. 902(3) provides that a document is self-authenticating if it:

---

[8] As business records, these documents are nontestimonial.  Crawford v. Washington, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records . . . .").  The district court did not abuse its discretion in ruling that the A-File documents in this case are all "quintessentially administrative, ministerial and nontestimonial" and therefore admissible as business records or public records.  Additionally, we agree with the district court that because these records were nontestimonial, they do not implicate Defendant's rights under the Confrontation Clause.

> [P]urport[s] to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position of the executing or attesting person . . . A final certification may be made by a . . . vice-consul . . . of the United States . . . .

Here, Defendant's birth certificate was executed by a person authorized by Mexican laws to execute birth certificates, and it was accompanied by a certification from a United States Vice-Consul that the person who executed it was authorized to do so. We are satisfied, therefore, that the district court did not abuse its discretion in admitting Defendant's Mexican birth certificate.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

14