# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-50379

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2018

Lyle W. Cayce
Clerk

MARIO CANDELA-RIOS,

> Petitioner - Appellant

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

> Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CV-220

Before KING, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

A district court determined that Mario Candela-Rios was born in Mexico, rather than the United States as he claims. Candela-Rios appeals, arguing that the district court erroneously (1) admitted a Mexican birth record and (2) assigned him the burden to prove his birth in the United States. We conclude the district court properly admitted the Mexican birth record. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50379

## I.     Background

The Government initiated removal proceedings against Candela-Rios in 2014.  During the proceedings, Candela-Rios admitted to being a native and citizen of Mexico.  He sought asylum.  In December 2014, he filed an asylum application on which he wrote that he was born in Mexico on November 27, 1967.  Later, Candela-Rios argued he could not be removed from the United States because he was a United States citizen by virtue of his birth in Texas.  The Government maintained he was born in Mexico.

The immigration judge found that Candela-Rios is a native and citizen of Mexico who was present in the United States without inspection or parole.  He ordered Candela-Rios removed.  Candela-Rios appealed to the Board of Immigration Appeals, but it dismissed his appeal.

Candela-Rios filed in this court a petition for review of the BIA's decision.  The Government moved for summary disposition, arguing that no genuine issue of material fact exists because the evidence shows that Candela-Rios was born in Mexico.  Candela-Rios opposed, claiming that he was born in the United States.  A previous panel of this court denied summary disposition and transferred the case to the United States District Court for the Western District of Texas, under 8 U.S.C. § 1252(b)(5)(B), "for a fact finding determination of where petitioner was born."  *Candela-Rios v. Lynch*, No. 15-60685 (5th Cir. Jan. 7, 2016)

At the hearing before the district court, Candela-Rios and the Government each presented evidence about where Candela-Rios was born.  Candela-Rios primarily relied on a Texas birth certificate indicating he was born on Highway 83, N., in Crystal City, Texas, on December 17, 1967.  Candela-Rios offered no medical or vaccination records, school records, church records, bills, property rental statements, immigration paperwork, photographs, or other evidence showing he was born in the United States or

2

No. 17-50379

even that his family was in the United States at the relevant time.

The Government, by contrast, presented significant evidence about Candela-Rios's early life. Its most significant piece of evidence was a Mexican birth record, which stated that Candela-Rios was born in Piedras Negras, Coahuila, Mexico, on November 27, 1967. Candela-Rios's father personally registered the birth three days later—weeks before his Texas birth certificate reported he was born. Though Candela-Rios objected to the admission of the Mexican birth record, the district court admitted it as a self-authenticating foreign public record under Federal Rule of Evidence 902(3).

The district court concluded that Candela-Rios was born in Mexico. It initially assigned the burden of proof to Candela-Rios. After weighing all the evidence, the district court made 52 findings of fact, including that Candela-Rios was born in Mexico, is a Mexican citizen, and is not a United States citizen. In response to a request from Candela-Rios to modify the judgment, the district court modified its findings of fact and conclusions of law. It determined that Candela-Rios's Texas birth certificate was "prima facie evidence" of birth in the United States. But it went on to conclude that the Government "rebutted" that prima facie evidence with the Mexican birth record and "evidence that [Candela-Rios] repeatedly stated under oath that he was born in Mexico." Candela-Rios moved a second time to modify the district court's judgment, which the district court denied. Candela-Rios now appeals.

## II.    Discussion

Candela-Rios argues that the district court improperly admitted the Mexican birth record and improperly assigned him the burden of proof to prove birth in the United States. We reject his argument about the Mexican birth record before explaining why we need not address his argument about the burden of proof.

No. 17-50379

## A. The Mexican birth record was properly admitted.

The district court properly admitted the Mexican birth record.[1]  Federal Rule of Evidence 902(3) explicitly permits admission of foreign public documents as self-authenticating documents.   The district court correctly concluded that the Mexican birth record was admissible under Rule 902(3) because the birth record was a copy of a record issued by the Civil Registry in Mexico, was attested to by an authorized person, and was accompanied by an authentication certificate signed by the Consul of the United States.  Candela-Rios has not identified why any of these conclusions were an abuse of discretion.[2]   He also argues the document is hearsay, but Federal Rule of Evidence 803(9) permits public records of vital statistics to be used as an exception to the hearsay rule.  *See United States v. Medrano*, 356 F. App'x 102, 109 (10th Cir. 2009) (admitting a Mexican birth record under Federal Rules of Evidence 803 and 902); *see also United States v. Vidrio-Osuna*, 198 F. App'x 582, 583 (9th Cir. 2006) (mem. op.) (admitting a Mexican birth record under Federal Rule of Evidence 807).

Candela-Rios complains that the birth record is not the *original* birth record and that the district court "misapprehended the [the Mexican birth record] as being contemporaneous with [Candela-Rios's] birth."   But the

---

[1] We "review district court rulings on the admissibility of evidence for abuse of discretion." *Guzman v. Jones*, 804 F.3d 707, 710 (5th Cir. 2015) (citing *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 293 (5th Cir. 2012)).

[2] Candela-Rios cites two inapposite Ninth Circuit cases to argue against admissibility. Those cases addressed (1) documents that did not satisfy the requirements of the Federal Rules of Evidence or (2) factual disputes over handwritten notations on a document. *See United States v. Bustamante*, 687 F.3d 1190, 1194 (9th Cir. 2012) (rejecting a typewritten affidavit by a private investigator regarding a birth record); *Dent v. Holder*, 627 F.3d 365, 371, 375–76 (9th Cir. 2010) (transferring to a district court to determine whether handwritten notations on a document had any bearing on the outcome of removal proceedings).  Those cases are irrelevant to the record in this case.

4

district court explicitly acknowledged that it was not an "original record" created contemporaneous to Candela-Rios's birth.  The Mexican birth record presented in court did not have to be contemporaneously created in order for the district court to conclude that his birth was registered contemporaneously; it still satisfied the rules of admissibility and could, therefore, be relied on for the truth of the facts asserted in it.  The district court did not err by admitting the Mexican birth record or inferring that Candela-Rios's father had registered a birth record with the Mexican government when he did.

**B. The Government proved Candela-Rios was born in Mexico even accepting Candela-Rios's argument regarding burden.**

Candela-Rios asserts that the district court erred by allocating the burden of proof to Candela-Rios to prove birthright citizenship.  He contends that the district court should have used the burden-shifting scheme employed by the Ninth Circuit in a similar case,[3] or required the Government to bear the burden regardless of shifting.  We need not decide that question because the district court's findings of fact and conclusions of law, as modified following Candela-Rios's motion to modify, as well as the overwhelming amount of evidence against Candela-Rios, establish that the Government would have prevailed even under Candela-Rios's preferred burden allocation.

We begin with the evidence against Candela-Rios. The Government presented ample evidence that Candela-Rios was born in Mexico and never claimed to be born in Texas until much later in life:

- A Mexican birth record indicates that Candela-Rios was born in Mexico on November 27, 1967.  The event was registered by his father three days after the date on the record.

- Candela-Rios was baptized in Mexico in June 1969.

---

[3] *See Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015) (en banc).  Under this burden shifting-scheme, the Government bears the initial burden to prove alienage and then bears it again if the alleged alien presents evidence of birth in the United States.

- Candela-Rios attended elementary school and some secondary education in Mexico. He never attended school in the United States.

- Candela-Rios applied for and received a border-crossing card when he was 14 years old. Border crossing cards are issued to "eligible Mexican citizens, who are residents of Mexico, to facilitat[e] their entry into the United States." When Candela-Rios applied for the card, he reported his birth date was the same as on the Mexican birth record: November 27, 1967.

- During 1999 and 2000, Candela-Rios was apprehended attempting to enter the United States three different times. Each time, the record of the apprehension reported his birth date was November 26, 1967—right around the time on his Mexican birth record. Candela-Rios never claimed U.S. citizenship and instead accepted voluntary return to Mexico.

- Candela-Rios conceded that he was issued a CURP number in 2007, which is "an identification system the federal Mexican government created in 1996 to give a unique identification number to each Mexican citizen."

- When the Government first instituted removal proceedings against Candela-Rios, he initially attested, under penalty of perjury, that he was a Mexican citizen and raised no claim of U.S. nationality. He only later asserted that he was born in the United States.

The only evidence tending to show that Candela-Rios was born in the United States is testimony of interested witnesses and the Texas birth certificate. The Government, however, has undermined the credibility of the Texas birth certificate:

- The Texas birth certificate indicates Candela-Rios was born in Texas on December 17, 1967, some seventeen days *after* his father registered his birth in Mexico (and three weeks after he was born, according to the Mexican birth certificate). Thus, on its face, the Texas birth certificate is highly suspect in light of the earlier registry of a different (and earlier) birth date in Mexico.

- Further, the Texas birth certificate had previously been called into question by the State Department when Candela-Rios applied for a passport. The State Department rejected his use of the Texas

No. 17-50379

birth certificate to prove citizenship because the midwife responsible for registering the birth was suspected of submitting false birth records. Candela-Rios never submitted additional evidence to the State Department or requested a hearing to support his claim to birth in the United States. The Texas birth certificate's validity was called into question well before this hearing, and Candela-Rios did nothing to resolve the concerns.

- Additionally, the district court concluded that the Texas birth certificate was not signed by either of Candela-Rios's parents. It was registered with the local registrar and Texas Bureau of Vital Statistics by the midwife only after the Mexican birth record had already been registered by his father.

- Candela-Rios's only theory for why he has a Mexican birth certificate is that his father fraudulently obtained one around the time Candela-Rios began school so he could attend school in Mexico. But the birth record indicates his birth was registered just three days after his birth on November 27, 1967—years before his father would have registered him for school.

- Candela-Rios changed his story about how he learned of his true birth location. He initially claimed that his mother first told him when he was 15 years old that he was born in the United States. Later, he claimed his mother told him when he was 36 years old. Thus, Candela-Rios's story about when and how he learned about his Texas birth lacks credibility.

- Other than the Texas birth certificate, Candela-Rios could not provide any evidence contemporaneous to his birth that demonstrated he was born in the United States or that his mother was present there at the relevant time.

Thus, Candela-Rios has presented no credible evidence undermining the Mexican birth record. The Government, however, has presented overwhelming evidence showing that Candela-Rios was born in Mexico.

The district court's findings of fact accord with this view of the evidence. It concluded that Candela-Rios was born in Mexico in November 1967, which his father registered days later. The Texas birth certificate did not discredit the Mexican birth record because the Texas birth certificate post-dated the Mexican birth record and was registered by an individual that had been

accused of filing false birth certificates. When the State Department rejected the Texas birth certificate's efficacy, Candela-Rios did nothing to resolve the State Department's concerns. The district court also cited Candela-Rios's schooling in Mexico, actions during his many border crossings, and sworn statements about his citizenship as further evidence that he was not an American citizen.

This case is not a close call, which the district court recognized. In response to Candela-Rios's first request to modify the judgment, the district court acknowledged that Candela-Rios made out a prima facie case of U.S. birth through his Texas birth certificate. It then concluded that the Government rebutted all of that evidence with its own more powerful evidence about his birth. The district court thus implicitly determined that even if the Government bore the burden, it presented sufficient evidence to prove Candela-Rios was born in Mexico.

Because this case is not close, any error in misallocating the burden was harmless error under Federal Rule of Civil Procedure 61. Even under Candela-Rios's preferred burden allocation, the Government would have prevailed. The district court's amended judgment, in conjunction with the overwhelming amount of evidence against Candela-Rios, make it unnecessary to resolve Candela-Rios's arguments regarding the burden of proof.

AFFIRMED.

17-50379

STEPHEN A. HIGGINSON, Circuit Judge, concurring:

I agree that, in light of the overwhelming evidence of Candela-Rios's Mexican birth, the judgment of the district court should be affirmed. Given the significance of the issue, the severity of its consequences, and its likelihood of recurrence, I would take this opportunity to clarify that the government bore the ultimate burden of proving foreign citizenship by clear, unequivocal, and convincing evidence. *See Mondaca-Vega v. Lynch*, 808 F.3d 413, 417, 419 (9th Cir. 2015) (en banc).[1]

The parties agree that, in removal proceedings against a person alleged to be present without being admitted or paroled—as was the case here—"the Service must first establish the alienage of the respondent," 8 C.F.R. § 1240.8(c), and it must do so by clear, unequivocal, and convincing evidence. *See Woodby v. INS*, 385 U.S. 276, 277 (1966) ("[I]t is incumbent upon the Government in [removal] proceedings to establish the facts supporting deportability by clear, unequivocal, and convincing evidence."); *Matadin v. Mukasey*, 546 F.3d 85, 91 (2d Cir. 2008) (stating that absent a contrary directive from Congress, *Woodby* controls and the government must establish facts supporting removal by clear, unequivocal, and convincing evidence).[2] The

---

[1] It is worth noting that in *Mondaca-Vega*, the government—including in its opposition to *certiorari*—accepted that in a § 1252(b)(5)(B) proceeding in which the petitioner claims birthright citizenship, the government bears the ultimate burden to prove alienage by clear, unequivocal, and convincing evidence. *See* Brief for Respondent in Opposition at 8–13, *Mondaca-Vega v. Lynch*, No. 15-1153 (June 2016).

[2] Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress was silent as to the burden of proof in removal proceedings. *See Ward v. Holder*, 733 F.3d 601, 604 (6th Cir. 2013). In the absence of a statement from Congress, the Supreme Court held in *Woodby* that the government must "establish all the facts supporting deportability by clear, unequivocal, and convincing evidence." 385 U.S. at 277. With IIRIRA, Congress arguably lowered the government's burden of proof to clear and convincing evidence in cases in which it sought to remove someone based on one of the deportability grounds enumerated in 8 U.S.C. § 1227(a). *See* 8 U.S.C. § 1229a(c)(3) ("[T]he Service has the burden of establishing by clear and convincing

government has argued in this case that the burden flips in proceedings under § 1252(b)(5)(B), which are treated "as if an action had been brought in the district court under section 2201 of Title 28 [the Declaratory Judgement Act]." 8 U.S.C. § 1252(b)(5)(B). But that procedural distinction makes no substantive difference to the assignment of the burden of proof. *See Medtronic, Inc. v. Mirowski Family Ventures, L.L.C.*, 134 S. Ct. 843, 849 (2014) (holding that the Declaratory Judgment Act is procedural only and does not affect substantive rights including the allocation of the burden of proof). The burden is on the government to prove alienage, and § 1252(b)(5)(B) does nothing to change that.[3]

In placing the burden of proof on Candela-Rios, the district court and the government rely on cases involving claims of citizenship by naturalization rather than by birth. But those cases do not answer the question before us. When foreign birth is conceded, as it necessarily is in any case involving a claim

---

evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable."); *see also Ward*, 733 F.3d at 605 (citing *Addington v. Texas*, 441 U.S. 418 (1979), and holding that the "'clear, unequivocal, and convincing standard' is a more demanding degree of proof than the 'clear and convincing' standard"). *But see Mondaca-Vega*, 808 F.3d at 421–22 (citing *Addington* and concluding that "clear and convincing" and "clear, unequivocal, and convincing" are the same standard). Here, however, Candela-Rios was never admitted to the United States, and the government charged him not as deportable but as inadmissible on one of the grounds enumerated in 8 U.S.C. § 1182, namely, being present without being admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i). Because Congress has not spoken to the burden of proof in such proceedings, *Woodby*'s requirement of clear, unequivocal, and convincing evidence continues to apply. *See Matadin*, 546 F.3d at 91.

[3] We have previously held that, in a proceeding under 8 U.S.C. § 1503(a)—the predecessor to § 1252(b)(5)(B) and the provision that continues to apply to persons seeking declarations of citizenship in contexts other than removal proceedings—one seeking a declaration of citizenship after having been ordered removed bears the burden "to prove that she is an American citizen." *De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958). But *De Vargas* was decided before both *Woodby*, which clearly places the burden on the government in removal proceedings, and *Medtronic*, which clearly holds that the fact that an action is for a declaratory judgment does not alter the allocation of the burden of proof. Those cases abrogate *De Vargas*. *See United States v. Boche-Perez*, 755 F.3d 327, 334 (5th Cir. 2014).

17-50379

to naturalization, there appropriately is a presumption of alienage. *See Scales v. INS*, 232 F.3d 1159, 1163 (9th Cir. 2000) (stating that concession of foreign birth "giv[es] rise to the presumption of alienage"). Accordingly, in such cases, the burden shifts to the person claiming naturalization to rebut the presumption of alienage and prove that he or she qualifies for naturalization. *See Leal Santos v. Mukasey*, 516 F.3d 1, 4 (1st Cir. 2008) (stating, in context of claim to derived citizenship, that "evidence that the person in removal proceedings was born abroad meets [the government's] burden [of proving alienage] unless the person can prove, by a fair preponderance of the evidence, that he possesses derivative citizenship."); *see also Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006) ("As Petitioner was not born in the United States, naturalization is his sole source for a claim of citizenship . . . [and he] has the burden of proving that he qualifies for naturalization . . . ."). But where, as here, a person present in the United States asserts birthright citizenship, foreign birth is, of course, not conceded, and the government therefore retains the burden of proving alienage.[4]

In summary, when a person in the United States is alleged to be present without being admitted or paroled, and challenges, in a § 1252(b)(5)(B) proceeding, the government's assertion of alienage by claiming birthright

---

[4] The government also relies on cases involving passport applications to support its position that, in proceedings under §§ 1503 and 1252(b)(5)(B), the person seeking a declaration of citizenship bears the burden of proof. But such cases are distinguishable. In the context of passport applications, federal regulations place the burden to prove citizenship on the applicant. 22 C.F.R. § 51.40 ("The applicant has the burden of proving that he or she is a U.S. citizen or non-citizen national."). Because declaratory judgment proceedings under either §§ 1503 or 1251(b)(5)(B) do not change the allocation of the burden of proof, which is derived from the underlying substantive law, and because passport applications and removal proceedings are governed by different bodies of substantive law, passport cases are irrelevant to the question presented here.

citizenship, the government bears the burden of proving foreign citizenship by clear, unequivocal, and convincing evidence.